UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PETER FUSCO,

                               Plaintiff,

         -against-

COUNTY OF NASSAU,
NASSAU COUNTY POLICE DEPARTMENT,
NASSAU COUNTY POLICE COMMISSIONER
PATRICK RYDER, CHRISTOPHER V. TODD ESQ.,
individually and in his official capacity, "JOHN DOE
#1-3", individually and in his official capacity, "JANE
DOE #1-3", individually and in her official capacity,
the last three names being fictitious and unknown
to the plaintiff, but intended to designate parties
with an interest and knowledge of in the facts herein,

                            Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CV-04771 (DRH)(AKT)

**APPEARANCES:**

**For Plaintiff:**

La Reddola, Lester & Associates, LLP
600 Old Century Road, Suite 230
Garden City, New York 11530
By:    Robert J. La Reddola, Esq.

**For Defendant:**

Nassau County Attorney
1 West Street
Mineola, New York 11501
By:    Ralph J. Reissman, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Peter Fusco ("Plaintiff" or "Fusco") brought this action against Defendants

County of Nassau ("County"), Nassau County Police Department ("Police Department"), Nassau

County Police Commissioner Patrick Ryder, Christopher V. Todd, Esq, "John Doe #1-3", and

"Jane Doe # 1-3," (collectively, "Defendants"). Plaintiff seeks a declaratory judgment, monetary damages and injunctive relief related to Defendants' alleged violation of Plaintiff's Second and Fourteenth Amendment rights under 42 U.S.C. § 1983, including *Monell* liability. Plaintiff also seeks punitive damages under 42 U.S.C. § 1983 and legal fees under 42 U.S.C. § 1988(b). Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The following allegations are taken from the Complaint ("Compl."), including the documents attached thereto,[1] and are assumed true for purposes of this motion.

### I.    *Confiscation of Plaintiff's Firearms and Pistol License*

Plaintiff retired from the Nassau County Police Department ("NCPD") on January 14, 2010. (Compl. [ECF No. 1] ¶ 14.) Upon retirement from NCPD, he received a "retired member's pistol license" and "'good guy' letter." *Id*. Concurrent with Plaintiff's retirement, Plaintiff and his then-wife, Natalie Fusco, were experiencing "matrimonial difficulties." (*Id*. ¶ 13.) Thereafter, in 2014, Plaintiff and Natalie Fusco were involved in seven "domestic incidents" that arose "out of the matrimonial difficulties between Plaintiff and his wife…."[2] (*Id*. ¶ 15.) Plaintiff alleges four of these "incidents" occurred at his "request" "for

---

[1] The Court may consider documents attached to the Complaint for purposes of this motion to dismiss. *See Chambers v. Time Warner. Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Plaintiff contends in his opposition brief that Exhibit 3 to his Complaint (also attached to Defendants' motion as Exhibit C), the Appeals Officer's Findings and Recommendation, is not part of the Complaint and is provided "merely as proof of denial of the Plaintiff's appeal and not for the truth of the matters asserted." (Pl.'s Mem. in Opp. [ECF No. 21-2] at 2.) Furthermore, Plaintiff objects to Defendants' citation to Exhibit C for a recitation of Plaintiff's history of incidents with his former wife. Accordingly, the Court relies on the facts as presented in the Complaint.
[2] The Appeals Officer's Findings and Recommendation provide a more detailed account of these incidents, however, as noted, Plaintiff disputes the facts as set forth in those findings.

'documentation purposes.'"[3]  (*Id*.)  Following the incident on March 10, 2014, Plaintiff voluntarily surrendered his firearms and pistol license.[4]  (Compl. ¶ 23; Compl. Ex. 1 (Notice of Claim) [ECF No. 1-1] at 2.)  His pistol license was suspended on May 5, 2014.  (*Id*. ¶ 16.)

*II. Plaintiff's Efforts to Reinstate his Pistol License*

On or about October 6, 2014, five months after Plaintiff's pistol license had been suspended, Hon. Ellen R. Greenberg vacated a Family Offense Petition and Temporary Orders of Protection that had previously been entered against Plaintiff.[5]  (Compl. ¶ 17.).  Approximately two days later, on October 8, 2014, "Plaintiff wrote to the NCPD requesting his pistol license suspension be lifted so that he could seek 'numerous employment opportunities that require [him] to possess [his] licensed firearms.'"  (Compl. ¶ 18.)  Plaintiff allegedly received no response to this letter and asserts that no investigation took place.  (*Id*. ¶ 19.)

On or about May 8, 2017, Plaintiff's divorce from his wife was finalized, and Plaintiff "received sole custody of their son."[6]  (*Id*. ¶¶ 20-21.)  Approximately a week later, on or about May 15, 2017, Plaintiff made "a formal, written request for the return of the surrendered firearms" and the reinstatement of his pistol license.  (*Id*. ¶ 23.)  Following Plaintiff's request, in June 2017, an employee of the NCPD Pistol License Section called Natalie Fusco on the telephone "to inquire if she consented to the return of the pistol license, and such consent was

---

[3] The Court assumes, though it is not clear from the Complaint, that when Plaintiff says that four of the domestic incidents occurred at his "request," he is referring to the domestic incidents being reported to the police or some other agency, rather than him initiating a dispute with his former wife.

[4] "[Plaintiff's] wife did not want [his] firearms to remain in the residence due to prior domestic incidents." (Compl. Ex. 3 at 3.)

[5] Plaintiff does not provide the details surrounding the issuance of the Family Offense Petition or the Temporary Orders of Protection.  Exhibit 1 to the Complaint reveals that at least two Family Offense Petitions and Temporary Orders of Protection were issued against Plaintiff, the first on July 14, 2014 and the second on August 28, 2014.  Both were withdrawn on October 6, 2014.  (Compl. Ex. 1 at 2.)

[6] Plaintiff later filed contempt charges against Natalie Fusco "on the basis that she refused to allow him to see or speak to his other children, in violation of a court order."  (*Id*. ¶ 22.)

refused." (*Id*. ¶ 24.)  Plaintiff alleges "it is the policy of NCPD Pistol License Section to seek the approval of the ex-wife prior to returning a pistol license." (*Id*. ¶¶ 25-26.)

Approximately two months after this correspondence between Natalie Fusco and the NCPD Pistol License Section, on or about August 31, 2017, Plaintiff received a Revocation Letter, which changed the status of his pistol license from "suspended" to "revoked." (*Id*. ¶ 27.) The Revocation Letter stated he must wait a minimum of five years before reapplying for a new license, "effectively prohibit[ing] him from owning a handgun for an additional five (5) years." (*Id*. ¶ 28.)  The Revocation Letter also stated Plaintiff was prohibited from possessing firearms, rifles, and shotguns, "effectively barring him from owning any handgun or rifle or shotgun for five years minimum." (*Id*. ¶ 29.)

The Revocation Letter noted Plaintiff's opportunity for an administrative appeal of the revocation decision with an Appeals Officer, which Plaintiff filed in writing on or about September 26, 2017. (*Id*. ¶¶ 28-30.)  "On or about August 24, 2018, nearly a year later, the NCPD reached a decision and denied the appeal." (*Id*. ¶ 31.)  The Appeals Officer in charge of Plaintiff's appeal, Christopher V. Todd, Esq., found that "sufficient evidence exists to support the Pistol License Section's Determination to revoke Appellant's Nassau County Retired Police Officer pistol license." (*Id*. ¶ 33 (internal citation and quotations omitted).)  He went on to state "[e]ven if his wife's allegations are not true, at a minimum they establish that the relationship between Appellant and his wife is a deteriorating, emotionally-volatile one," and that the "volume of domestic incidents and their underlying facts and circumstances, *inter alia*, provided the Pistol License section with 'good cause' as defined by New York State Pen[al] Law §400.00." (*Id*. ¶¶ 34-37 (internal citation and quotations omitted).)  Plaintiff alleges he "was not

given a hearing prior to the Defendants making any of these determinations with regard [to] his license revocation or the surrender of his firearms." (*Id*. ¶¶ 36.)

   *III. Revocation of Plaintiff's Pistol License*

   According to the NCPD Pistol License Handbook, there are instances which trigger automatic revocation of a pistol license, such as when "a licensee is named as the respondent in a permanent Order of Protection." (*Id*. ¶ 45.) The NCPD Pistol License Handbook also lists circumstances that prompt immediate suspension of a pistol license and the commencement of "an investigation to determine whether or not the license should be revoked." (*Id*. ¶ 46.) One such circumstance is a "[r]eport of any domestic [dispute] involving a licensee where violence is threatened or alleged to have occurred or the existence of a volatile domestic situation." (*Id*. ¶ 46.)

   According to Plaintiff, "no good cause exists to revoke Plaintiff's pistol license as a matter of law," and "the County and the Police Department were incorrect in applying the 'good cause' standard to a revocation." (*Id*. ¶¶ 38-47.) "Rather, the County and the Police Department are more broad in their issuance of a revocation [than] Penal Law §400 provides." (*Id*. ¶ 49.) Plaintiff contends "[a]s there was no current Court Order, and the 'volatile domestic situation' had subsided long ago following the divorce, and amounted to nothing after all, there were no circumstances upon which the County and Police Department could issue the revocation to Plaintiff under Penal Law §400…." (*Id*. ¶ 50.) Plaintiff also asserts NCPD acted improperly when it "suspend[ed] his right to own and possess a rifle or shotgun," for five years. (*Id*.) Therefore, Plaintiff contends, Defendants infringed his constitutional rights under the Second and Fourteenth Amendments of the United States Constitution.[7]

---

[7] Plaintiff appears to have brought a claim against Defendants in Nassau County Supreme Court in December 2018 for conversion, trover, and civil rights violations pursuant to 42 U.S.C. § 1983, apparently based on the same core

**DISCUSSION**

I.      *Rule 12(b)(6) Legal Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions.  Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.  Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.  *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss.  *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but asks

---

facts as alleged here.  (Compl. Ex. 1 [ECF No. 1-1].)  Plaintiff asserts that, "[p]ursuant to New York General Municipal Law §50-e and §50-1, [he] filed a Notice of Claim and more than 90 days have elapsed since the service of the Notice of Claim upon the Defendants and compliance, adjustment or payment thereof has been neglected or refused."  (Compl. ¶ 3.)

for more than a sheer possibility that defendant acted unlawfully.  Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between

possibility and plausibility of 'entitlement to relief.'"  *Id*. at 678 (quoting *Twombly*, 550 U.S. at

556-57) (internal citations omitted); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir.

2007).  Determining whether a complaint plausibly states a claim for relief is "a context specific

task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

II.     *The Parties' Arguments*

        Plaintiff sets forth four causes of action in the Complaint: 1) infringement of Plaintiff's

Second and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; 2) *Monell* claim

pursuant to 42 U.S.C. § 1983; 3) punitive damages pursuant to 42 U.S.C. § 1983; 4) and legal

fees pursuant to 42 U.S.C. § 1988.

        Defendants present several arguments in favor of dismissal.  First, Defendants argue that

the Nassau County Police Department should be dismissed as it is not a suable entity.  (Defs.'

Mem. in Supp. [ECF No. 21-1] at 6.)  Next, Defendants argue that Plaintiff was afforded due

process through the revocation appeals process.  (*Id.* at 7.)  With respect to Plaintiff's Second

Amendment rights, Defendants argue that Plaintiff has no absolute right to a gun, the License

Division has broad discretion in denying a handgun permit, New York State has an interest in

removing firearms from those accused of domestic violence, and that Plaintiff is not prevented

from owning rifles or shotguns.  (*Id.* at 8-13.)  With respect to the five-year waiting period,

Defendants argue the waiting period to reapply for a pistol license is in line with New York state

law.  (*Id.*)  Finally, given their arguments about Plaintiff's Second and Fourteenth Amendment

claims, Defendants argue that Plaintiff cannot demonstrate entitlement to relief under *Monell* or 42 U.S.C. § 1988.  (*Id.* at 14-15.)

In opposition, Plaintiff argues that he was denied due process before revocation of his handgun license.  (Pl.'s Mem. in Opp. [ECF No. 21-2] at 9-12.)  With respect to his Second Amendment claim and in response to Defendants' claim that he is not entitled to a particular firearm, Plaintiff argues that he has adequately plead a deprivation of his Second and Fourteenth Amendment Rights.  (*Id.* at 12-13.)  As for the Pistol License Division's discretion, Plaintiff argues that such discretion is in the context of issuance rather than revocation of a license.  (*Id.* at 13-17.)  Furthermore, Plaintiff contends that Defendants confuse the property of a handgun with a license.  (*Id.* at 17-20.)  Finally, Plaintiff argues that the five-year waiting period is arbitrary and in contradiction of New York's licensing law, and that Defendant's contention that Plaintiff may possess longarms contradicts Defendants' actual policy and position in other similar cases. (*Id.* at 20-22.)

III.     *Claims Against Nassau County Police Department*

As an initial matter, the claims against the Nassau County Police Department are dismissed.  The Nassau County Police Department is not a suable entity because it is an administrative arm of Nassau County.  *Panzella v. Cnty. of Nassau*, 2015 WL 5607750, at *5 (E.D.N.Y. Aug. 26, 2015), *aff'd in part, appeal dismissed in part sub nom. Panzella v. Sposato*, 863 F.3d 210 (2d Cir. 2017)*, as amended* (July 18, 2017).  Plaintiff argues, without citation to any legal support, that "[d]ue to the nature of the injunctive relief sought herein, and potential for damage due to destruction by the NCPD, we respectfully argue the NCPD should continue as a named defendant."  (Pl.'s Mem. in Opp. at 9.)  Given the settled case law that administrative arms of municipalities are not suable entities, and in the absence of any case law counseling in

favor of Plaintiff's position, the Plaintiff's claims against the Nassau County Police Department

are dismissed with prejudice. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp.

2d 539, 552 (S.D.N.Y. 2009) ("For purposes of this lawsuit, the only proper municipal party

defendant is the [Town], and the only question is whether an injunction should issue against the

Town (which would include all of its municipal entities).")

IV.    *Legal Framework for Firearm Licensing in New York*

Before addressing the merits of Plaintiff's claims, the Court finds it useful to provide an

overview of the firearm licensing scheme in New York Penal Law ("NYPL") § 400.00.  "New

York State maintains a general prohibition on the possession of firearms absent a license."

*Libertarian Party of Erie Cnty v. Cuomo*, 970 F.3d 106, 113 (2d Cir. 2020) (internal citations

and quotations omitted).  NYPL § 400.00 "is the exclusive statutory mechanism for the licensing

of firearms in New York State." *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 85-86 (2d Cir.

2012) (internal quotations and citations omitted).  "In New York, individuals may apply for a

'premises license' or a 'carry license." *Abekassis v. New York City*, 2020 WL 4570594, at *1

(S.D.N.Y. Aug. 7, 2020).

Eligibility for a firearm license is governed by NYPL § 400.00(1), which requires, among

other criteria, that an applicant be someone "of good moral character" "who has not had a license

revoked or who is not under a suspension or ineligibility order issued pursuant to the provisions

of section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the

family court act" [8] and "concerning whom no good cause exists for the denial of the license."

NYPL § 400.00(1).

---

[8] Both N.Y. Crim. Proc. Law § 530.14 and N.Y. Fam. Ct. Act § 842-a pertain to "Suspension and
revocation of a license to carry, possess, repair or dispose of a firearm or firearms pursuant to Section
400.00 of the penal law and ineligibility for such a license; order to surrender firearms."  N.Y. Crim. Proc.
Law § 530.14 (McKinney); N.Y. Fam. Ct. Act § 842-a (McKinney).

Applications for a firearm license are made to the licensing officer in the county where the applicant resides.  NYPL § 400.00(3)(a).  The licensing officer in Nassau County, where Plaintiff resides, is the Nassau County Police Commissioner.  NYPL § 265.00(10).  Licensing officers have "broad discretion in determining whether to issue or revoke a license to possess firearms."  *Juzumas v. Cnty. of Nassau*, 417 F. Supp. 3d 178, 180-181 (E.D.N.Y. 2019).

A "firearm" includes, inter alia, (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length.  N.Y. Penal Law § 265.00(3).  A shotgun is a "weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger."  NYPL § 265.00(12).  A rifle is a "weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger."  NYPL § 265.00(11).  Rifles and shotguns are known as long guns or longarms.  *See Dudek v. Nassau Cnty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 407 n.7 (E.D.N.Y. 2013).

Longarms "pose a unique legal issue because, unlike other firearms 'there is no license requirement for the purchase or possession of longarms.'"  *Panzella*, 2015 WL 5607750, at *1 (citing *Razzano v. Cnty. of Nassau*, 765 F. Supp. 2d 176, 180 (E.D.N.Y. 2011)).  Nonetheless, the possession of longarms is regulated in New York.  *See Kachalsky*, 701 F.3d at 85 n.3 (citing NYPL § 265.01(3) (prohibiting longarms on school grounds) and NYPL § 265.05 (prohibiting children less than sixteen years old from possessing longarms without a hunting permit)).

"Firearm licensing and longarm regulation converge in Section 400.00's subsection on license revocation and suspension." *Juzumas*, 417 F. Supp. 3d at 181 (citing NYPL § 400.00(11)). Section 400.00(11)(a) provides:

> (a) The conviction of a licensee anywhere of a felony or serious offense or a licensee at any time becoming ineligible to obtain a license under this section shall operate as a revocation of the license. A license may be revoked or suspended as provided for in section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act. Except for a license issued pursuant to section 400.01 of this article, a license may be revoked and cancelled at any time in the city of New York, and in the counties of Nassau and Suffolk, by the licensing officer, and elsewhere than in the city of New York by any judge or justice of a court of record; a license issued pursuant to section 400.01 of this article may be revoked and cancelled at any time by the licensing officer or any judge or justice of a court of record. The official revoking a license shall give written notice thereof without unnecessary delay to the executive department, division of state police, Albany, and shall also notify immediately the duly constituted police authorities of the locality.

NYPL § 400.00(11)(a). Longarms are referenced in the section governing the consequences of license suspension and revocation, NYPL § 400.00(11)(c), which provides:

> (c) In any instance in which a person's license is suspended or revoked under paragraph (a) or (b) of this subdivision, such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency as provided in subparagraph (f) of paragraph one of subdivision a of section 265.20 of this chapter. In the event such license, firearm, shotgun, or rifle is not surrendered, such items shall be removed and declared a nuisance and any police officer or peace officer acting pursuant to his or her special duties is authorized to remove any and all such weapons.

NYPL § 400.00(11)(c).

V.   *Section 1983 Claims*

a.   *Applicable Legal Standards*

Section 1983 provides in pertinent part:

> Every person who, under color of . . . [state law] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or a] suit in equity….

42 U.S.C. § 1983.  "In other words, a § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of her rights or privileges secured by the Constitution or federal laws." *Lynch v. Southampton Animal Shelter Found., Inc.*, 971 F. Supp. 2d 340, 348 (E.D.N.Y. 2013) (citing *Annis v. Cty of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998)).

Plaintiff asserts that Defendants have infringed his "constitutional right under the 2nd Amendment of the United States Constitution, the 14th Amendment of the United States Constitution, other Amendments and sections of the Constitution, laws and statutes of the State of New York and the New York State Constitution."  (Compl. ¶ 74.)  Plaintiff's § 1983 claim is dismissed to the extent it is premised on violations of state law because state law claims are not cognizable under § 1983.  *See Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 607 (E.D.N.Y. 2011) (citing *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985)).

Because the only specific federal rights Plaintiff points to are under the Second and Fourteenth Amendments to the Constitution, the Court addresses only those rights.  Plaintiff contends that the County "has created a policy aimed to reduce the overall firearm ownership of Nassau County citizens" by taking six actions:

a. the County incorrectly interprets the language within Penal Law § 400.00(11) ("at any time") to allow the County to revoke a pistol license for any reason;

b. the County, after suspending a license, fails to immediately review the suspension;

c. the County bans all Second Amendment rights upon the revocation of a pistol license;

d. the County prohibits all residents from receiving a "shall issue" premise license under § 400.00(2)(a);

e. the County reviews all pistol licensees every five years, instead of New York State; and

f. the County arbitrarily refuses to consider applications for five years following a revocation.

(Compl. ¶ 71.)  Plaintiff does not specify which of the actions fall within the Second Amendment versus Fourteenth Amendment framework.  He does note, in his opposition brief, that "[t]he Fourteenth Amendment claim is based upon due process and the revocation, loss of both pistols and long arms, and seizures of the handguns, whereas the Second Amendment claim is based upon the interference with the lawful firearm ownership and possession by the Defendants."  (Pl.'s Mem. in Opp. at 13.)  Accordingly, the Court assumes that Plaintiff intends actions a, c, d, and e, which appear to relate to the "interference" with Plaintiff's firearm ownership, under the Second Amendment and actions b and f, which seem to relate to due process violations, under the Fourteenth Amendment.

      *b.  Second Amendment Claim*

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.  Two recent Supreme Court cases, *District of Columbia v. Heller* and *McDonald v. City of Chicago*, explored the reach of the Second Amendment.  In *Heller*, the Court held that the Second Amendment protects an individual right to possess and carry arms for traditionally lawful purposes, such as self-defense within the home.  *D.C. v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008).  *McDonald* established that the Second Amendment's protections apply to the states through the Fourteenth Amendment's Due Process Clause.  *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

The "right secured by the Second Amendment is not unlimited."  *Heller*, 554 U.S. at 626. The Court in both *Heller* and *McDonald* recognized limits to the Second Amendment for certain categories of people, such as felons and the mentally ill, and the need for "laws imposing

conditions and qualifications on the commercial sale of arms." *Heller* 554 U.S. at 626-27; *accord*

*McDonald*, 561 U.S. at 786.

   c.   *The Challenged Firearm Restrictions*

   As noted above, Plaintiff contends that the County "has created a policy aimed to reduce

the overall firearm ownership of Nassau County citizens" by taking six actions.  The Court

assumes that Plaintiff intends the following alleged actions as Second Amendment violations

(lettered as they appear in the Complaint):

> a.   the County incorrectly interprets the language within Penal Law § 400.00(11) ("at any time") to allow the County to revoke a pistol license for any reason;
>
> c.   the County bans all Second Amendment rights upon the revocation of a pistol license;
>
> d.   the County prohibits all residents from receiving a "shall issue" premise license under § 400.00(2)(a); and
>
> e.   the County reviews all pistol licensees every five years, instead of New York State.

 (Compl. ¶ 71.)  Plaintiff does not provide any allegations to support his claims with

respect to issues d and e in his Complaint, beyond an overview of New York's licensing regime.

Accordingly, the Court dismisses his Second Amendment claim to the extent it is based on those

alleged actions and focuses its analysis on actions a and c identified above, viz. the County's

interpretation of NYPL § 400.00(11) and its alleged ban on Second Amendment rights upon the

revocation of a pistol license.

   d.   *Analytical Framework for Assessing Firearm Restrictions*

   Following *Heller*, the Second Circuit adopted a two-step inquiry for determining the

constitutionality of firearm restrictions.  *See New York State Rifle & Pistol Ass'n, Inc. v. City of*

*New York*, 883 F.3d 45, 55 (2d Cir. 2018), *cert. granted sub nom. New York State Rifle & Pistol*

*Ass'n, Inc. v. City of New York, N.Y.*, 139 S. Ct. 939, 203 L. Ed. 2d 130 (2019), and *vacated and remanded sub nom. New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 140 S. Ct. 1525, 206 L. Ed. 2d 798 (2020) ("NYSRP v. City").  First, the Court must "determine whether the challenged legislation impinges upon conduct protected by the Second Amendment, and second, if we conclude that the statute impinges upon Second Amendment rights, we must next determine and apply the appropriate level of scrutiny."  *Id.*  (internal quotations and citations omitted).

> i.  *Whether the Second Amendment Applies*

"[A]s the Second Circuit has done when faced with Second Amendment challenges to [local] firearm restrictions, the court proceeds on the assumption that the regulations at issue restrict activity protected by the Second Amendment."  *Toussaint v. City of New York*, 2018 WL 4288637, *5 (E.D.N.Y. Sept. 7, 2018) (quoting *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 247, 257 (2d Cir. 2015)) (internal quotations omitted).

> ii.  *Level of Scrutiny*

Assuming that Nassau County's policies with respect to NYPL § 400.00 restrict activity protected by the Second Amendment, the Court proceeds to determine what level of scrutiny to apply: rational basis, intermediate, or strict scrutiny.  *See NYSRP v. City*, 883 F.3d at 55. Because the Court in *Heller* indicated that "rational basis review may be inappropriate for certain regulations involving Second Amendment rights," the Court considers whether to apply heightened scrutiny, i.e. intermediate or strict.  *Id.*  In doing so, the Court considers two factors: "(1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right."  *Id.* at 56.

Here, Plaintiff's challenge does not implicate the core of the Second Amendment, which is the right of law-abiding citizens to use firearms in defense of hearth and home. *Toussaint*, 2018 WL 4288637 at \*6 (citing *Heller*, 554 U.S. at 634-635). Defendants argue in favor of applying intermediate scrutiny, which comports with the Second Circuit's recent decisions regarding New York's licensing scheme. For example, in *Kachalsky*, the Second Circuit applied intermediate scrutiny and affirmed New York's "proper cause" requirement for the issuance of a concealed carry license, even though the requirement "places substantial limits on the ability of law-abiding citizens to possess firearms for self-defense in public." 701 F.3d at 93, 96 ("Because our tradition so clearly indicates a substantial role for state regulation of the carrying of firearms in public, we conclude that intermediate scrutiny is appropriate in this case"). Indeed, the *Kachalsky* court noted that "[t]he Second Amendment does not foreclose regulatory measures to a degree that would result in handcuffing lawmakers' ability to prevent armed mayhem in public places." *Id*. at 96 (internal quotations and citations omitted). More recently, the Second Circuit applied intermediate scrutiny to uphold New York's licensing regime in *Libertarian Party of Eerie Cnty. v. Cuomo*. 970 F.3d 106 (2d Cir. 2020).

### iii.   Application of Intermediate Scrutiny

"When applying intermediate scrutiny under the Second Amendment, 'the key question is whether the statute at issue is substantially related to the achievement of an important governmental interest.'" *NYSRP v. City*, 883 F.3d at 62 (quoting *NYSRP v. Cuomo*, 804 F.3d at 261) (alterations adopted).

In its motion to dismiss, Defendants note that the Pistol License Section revoked Plaintiff's pistol license due to domestic disputes between him and his former wife and point to their interest in taking a "proactive stance against domestic violence." (Defs.' Mem. in Supp. at

10.)  Other courts have also found that "New York State has a legitimate interest in ensuring public safety, preventing crime, and confirming that only law-abiding, responsible individuals possess handguns to defend their person and property." *Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 231 (E.D.N.Y. 2019).  Another court in this district ruling on a similar policy in Suffolk County to seize an individual's firearms when that individual has been involved in a domestic dispute found that the policy "substantially relate[d] to the government's important interest in limiting the ability of those who … are involved in domestic incidents to access firearms." *Torcivia v. Suffolk Cnty., New York*, 409 F. Supp. 3d 19, 37-38 (E.D.N.Y. 2019); *see also Panzella*, 2015 WL 5607750 at * 10 (discussing "deadly combination" of firearms and domestic violence).  Furthermore, "[b]y permitting a licensing official to make a case-by-case, individualized determination as to an individual's fitness to hold a license, these provisions permit the government to more narrowly prescribe the circumstances under which an individual's Second Amendment rights may be burdened." *Torcivia*, 409 F. Supp. 3d at 38.

Plaintiff alleges in his Complaint that the Appeals Officer incorrectly relied on the "good cause" standard of Section 400.00 in revoking his license.  Plaintiff contends that "good cause" "is not the standard upon which revocation of a pistol license can be granted" under New York law.  (Compl. ¶ 39.)  Instead, Plaintiff argues, "good cause" is the relevant standard in determining whether to *issue* a license: "No license shall be issued or renewed except for an applicant…concerning whom no good cause exists for the denial of a license."  (Compl ¶ 40 (citing Section 400.00(1)(n).)  Be that as it may, the relevant provision regarding revocation provides that a license may be revoked when a "licensee at any time becom[es] ineligible to obtain a license under this section."  (Section 400.00(11)(a).)  Thus, the revocation provision clearly links back to the initial eligibility section, which includes the good cause standard.

In any event, as discussed above, the License Division is afforded discretion in revoking pistol licenses.  Plaintiff argues to the contrary that the "License Division is not imbued with broad discretion regarding the revocation of licenses it already granted."  (Pl.'s Mem. in Opp. at 14 (emphasis removed).)  Plaintiff contends that Section 400.00(11) "removes discretion from the licensing officers and instead places that discretion wholly within the purview of the courts." (*Id.*)  The plain language of Section 400.00(11) makes clear, however, that a licensing officer may revoke a license in Nassau County: "a license may be revoked and cancelled at any time in the city of New York, *and in the counties of Nassau and Suffolk, by the licensing officer*, and elsewhere than in the city of New York by any judge or justice of a court of record."  NYPL § 400.00(11) (emphasis added); *see also Weinstein*, 386 F. Supp. 3d at 227 ("NCPD's Pistol License Section has the authority to issue, deny, limit, suspend, or revoke handgun licenses.")  Plaintiff further argues that "the License Division must consider the judicial determinations in revocation decisions in cases such as this, especially where their decision is opposite of the court process set forth in Penal Law § 400.00(11)."  (Pl.'s Mem. in Opp. at 17.)  It is unclear what judicial determination Plaintiff refers to here.[9]

Nassau County's interpretation of NYPL § 400.00(11), as in, that it can seize firearms, including longarms, upon a showing of a domestic disturbance involving a license holder is substantially related to the important government interest of preventing domestic violence and supported by the plain language of the statute.  Furthermore, as noted above, the County's interpretation of NYPL § 400.00(11) is shared by other courts in this district.

---

[9] Earlier in his argument, Plaintiff refers to a judicial determination made by the family court to discontinue an order of protection against Plaintiff.  To the extent that is what Plaintiff refers to, it is unclear how the family court determination fits into the 400.00(11) scheme, as there is nothing before the Court to suggest that the family court issued a decision regarding Plaintiff's pistol license.

Plaintiff also complains that the County bans all Second Amendment rights upon revocation of a pistol license.  Section 400.00(11)(c) provides in relevant part that a person whose pistol license is revoked "shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person."  Defendants argue, and the Court agrees, that the "unambiguous language set forth under New York Penal Law § 400.00(11)(c) statutorily mandates the immediate confiscation of plaintiff's handguns, rifles and/or shotguns upon revocation of his pistol license."  (Defs.' Mem. in Supp. at 13.) Defendants go on to assert that "Plaintiff is free to obtain rifles and shotguns following the revocation by the Police Department of his pistol license and confiscation of his pistol."  (*Id.*) Plaintiff is understandably confused by that assertion given the language of his revocation letter, which stated that Plaintiff was prohibited from possessing longarms.  Plaintiff has not, however, alleged that he owned longarms or that he intends to now.  Instead, Plaintiff alleges that he sought reinstatement of his pistol license in connection with employment opportunities.  (Compl. ¶ 18 ("On or about October 8, 2014, Plaintiff wrote to the NCPD requesting that his pistol license suspension be lifted so that he could seek 'numerous employment opportunities that require [him] to possess [his] licensed firearms.'"))  Thus, the issue appears moot based on the facts as alleged in the Complaint.

Accordingly, for the reasons state above, Plaintiff's Second Amendment claims are dismissed without prejudice.  Because Plaintiff has not yet amended his complaint, and the Court believes some of the issues discussed above might be resolved by a more detailed pleading, the Court hereby grants Plaintiff leave to amend his Complaint.

b. *Fourteenth Amendment Claim*

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To assert a claim under Section 1983 based on an alleged violation of procedural due process, plaintiff must plead (1) he possesses a liberty or property interest protected by the Constitution or a federal statute, and (2) he was deprived of that liberty or property interest without due process." *Clavin v. Cnty. of Orange*, 620 F. App'x 45, 47-48 (2d Cir. 2015) (summary order) (citation omitted). "The appropriate process depends on the balancing of three factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)) (internal quotations omitted).

Plaintiff alleges that "Defendants have unlawfully revoked [his] pistol license without due process in that [he] was not given a hearing *prior* to the determination revoking [] his pistol license letter from the NCPD." (Compl. ¶ 77.) Defendants argue that they did not violate Plaintiff's due process rights because they provided him with notice as to the reasons for the revocation and an opportunity to appeal the revocation decision. (Defs.' Mem. in Supp. at 7-8.) Furthermore, Defendants, citing to a New York State, Appellate Division Second Department case, argue that a "formal adversarial hearing is not required before a pistol license is revoked." (Defs.' Mem. in Supp. at 7-8 (citing *Pacicca v. Allesandro*, 19 A.D.3d 500 (2d Dept. 2005).) Plaintiff questions the precedential value of *Pacicca* and argues that "[b]ecause handguns can only be possessed in connection to a handgun license in New York State, the revocation of

Plaintiff's license acted as an immediate deprivation of his handguns" as well as longarms.  (Pl.'s Mem. in Opp. at 9-12.)

As noted above, the first step in the due process analysis is to determine whether plaintiff has plead a protected liberty or property interest.  A number of post-*Heller* cases in this circuit have held that there is no constitutional right to a handgun license in New York State.  *Boss v. Kelly*, 306 F. App'x 649 (2d Cir. 2009) ("Under New York law, '[i]t is well settled that the possession of a handgun license is a privilege, not a right, which is subject to the broad discretion of the [licensing officer].'") (citing *Papaioannou v. Kelly*, 14 A.D.3d 459, 460, 788 N.Y.S.2d 378 (1st Dep't 2005)); *Weinstein v. Krumpter*, 386 F. Supp. 3d at 232 (collecting cases).  Furthermore, courts in this district have dismissed due process claims related to handgun licenses in New York.  *See id.* at 234-35 ("[T]here is no protectible interest in a New York state-issued handgun license, which is subject to the broad discretion of the licensing official...Without a protectible interest, the Plaintiff cannot state a procedural due process claim.")*; Perros v. Cnty. of Nassau*, 238 F. Supp. 3d 395, 400-401 (E.D.N.Y. 2017) ("Since it is a discretionary decision...to issue a pistol permit, and by extension, a good guy letter, Plaintiffs cannot establish that they have a protected property interest in either the pistol permit or the good guy letter they seek to obtain.") [10]

The Court is hesitant to tread further into the due process analysis given that some salient points are not addressed in the parties' papers, including the nature of Plaintiff's firearms.  As noted above, the law distinguishes between firearms and longarms.  This distinction is important because New York allows for possession of longarms without a pistol license.  Indeed, cases in

---

[10] The parties dispute whether there is a constitutional right "to hold some particular gun," however the Court does not see the relevance of the issue given that Plaintiff does not appear to argue that he should be entitled to a particular gun, but rather a pistol license.  (Defs.' Mem. in Supp. at 9; Pl.'s Mem. in Opp. at 12.)

this circuit have found that there is a protected property interest in longarms and that the County's retention of longarms affects that interest, however that conclusion has to do with the fact that a person can legally purchase a longarm in New York without a license. *See Razzano*, 765 F. Supp. 2d at 188 (finding that "plaintiff's lack of a pistol license does not provide a basis for the defendant's retention of his longarms" because "no license is required to purchase or own longarms"). For the same reason, courts have found that the government has a limited safety interest with respect to longarms because someone whose pistol license has been revoked would be free to purchase additional longarms without a pistol license. *See id.* at 86 ("[T]o the extent that a person whose longarms are seized can readily purchase and possess new longarms, Nassau County can only have a limited public safety interest in retaining that person's longarms.")

Furthermore, it is unclear if Plaintiff's due process claim includes Defendants' retention of his firearms (and if so, whether those firearms include longarms), or if his claim is specifically based on the revocation of his pistol license. To the extent Plaintiff intends his claim to include any non-longarm firearms, the discussion above forecloses entitlement to those firearms. *See, e.g., Weinstein*, 368 F. Supp. 3d at 234 ("the Plaintiff's due process claim regarding his handgun license and handguns does not state a claim" based on settled case law that "there is no protectible interest in a New York State-issued handgun license.").[11] Plaintiff has not provided any case law suggesting that he does in fact have a property interest in such firearms.

Plaintiff argues in his opposition brief that Defendants confuse the property of a handgun with a license. (Pl.'s Mem. in Opp. at 17.) In this regard, Plaintiff draws a distinction with *Napolitano v. Ryder*, a case which found there was no protectable interest in a pistol license:

---

[11] Furthermore, as noted above, "New York State maintains a general prohibition on the possession of firearms absent a license." *Libertarian Party of Erie Cnty*, 970 F.3d at 113 (internal citations and quotations omitted).

"The present case is distinct from *Napolitano*, however, due to the law linking loss of a handgun license to loss of longarms rights as well." (Pl.'s Mem. in Opp. at 17.) Because Plaintiff has not alleged a loss of longarms, the Court is not sure what the relevance of the distinction is.

Plaintiff goes on to say that "[t]he license requirement for a handgun does not have any impact upon the property ownership interest that an individual has in his handguns, rifles, and/or shotguns." (Pl.'s Mem. in Opp. at 18.) Plaintiff cites to *Heller*, arguing that the case "elevated *licensed* handguns, not longarms, to the core protection of the Second Amendment." (*Id.*) (emphasis added).[12] By Plaintiff's own admission, a license does have an impact upon the property interest in a handgun—an unlicensed handgun is surely not entitled to the same protections as a licensed one. Plaintiff also cites to *County of Nassau v. Canavan* for the proposition that a deprivation hearing is required, even where the government seeks to maintain possession of property "in which the interest is vested subject to a license, such as a motor vehicle." (Pl.'s Mem. in Opp. at 19.) In *Canavan*, however, the Court of Appeals held that due process did not require a pre-deprivation hearing but a post-deprivation hearing. N.Y.3d 134, 802 N.E.2d 616 (2003). Finally, Plaintiff also cites to *Razzano v. County of Nassau* in connection with his due process arguments. In that case, the court found that Nassau County had violated the plaintiff's due process rights by retaining his longarms without a *post*-deprivation hearing. 765 F. Supp. 2d 176, 186 (E.D.N.Y. 2011) (emphasis added). Here, of course, Plaintiff argues in favor of a pre-deprivation hearing.

---

[12] Plaintiff argues in his opposition that *Heller* provides a constitutionally protected right to handgun. (Pl.'s Mem. in Opp. at 11 (distinguishing Defendant's case law on the basis that it relied upon "pre-*Heller* caselaw which limited handgun ownership to a privilege, rather than a constitutionally protected individual right.")) *Heller* notes, however, that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626).

Accordingly, given the discussion above, the Court dismisses Plaintiff's claim to the extent it is based on a due process violation in connection with the revocation of his pistol license and non-longarm firearms due to the settled case law that "there is no protectible interest in a New York State-issued handgun license."  *See Weinstein*, 386 F. Supp. 3d at 234-35.

Plaintiff also claims a violation based on Nassau County's alleged policy of requiring someone whose pistol license has been revoked to wait five years before reapplying for a new license.  Defendants argue that the "[f]ederal courts situated in this circuit repeatedly upheld the constitutionality of New York's firearm licensing law." (Defs.' Mem. in Supp. at 12.) Defendants do not point to, and the Court is not aware of, what part of the statutory regime supports the five-year waiting period.  Indeed, none of the cases Defendants cited to discuss the five-year waiting period.  Plaintiff's submissions do not provide much context on this issue, either.  Accordingly, Defendants motion to dismiss is denied as to a Fourteenth Amendment violation premised on the five-year waiting period without prejudice.

As with the Second Amendment claims, the Court will grant Plaintiff leave to amend his Complaint to address the issues discussed above.

*VI.*   Monell *Claim*

Plaintiff brings his second claim, for municipal liability, under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978).  In order to bring a claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy.  *Id*. at 690-91.  Because the Court has not conclusively determined at this point whether Plaintiff has adequately alleged a violation of his constitutional rights, and Plaintiff will be afforded the opportunity to amend his complaint,

the Court is currently unable to reach a decision on this issue.  Accordingly, the motion to dismiss the *Monell* claim is denied at this time.

VII.    Attorneys' Fees Pursuant to 42 U.S.C. § 1988

For similar reasons as discussed above, the Court denies the motion to dismiss Plaintiff's request for attorneys' fees at this time.

### CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(6) motion to dismiss is granted in part and denied in part. The Clerk of Court is directed to dismiss Defendant Nassau County Police Department.

As noted above, although Plaintiff did not request to amend his complaint, given the lack of clarity surrounding many of the issues discussed above and the fact that Plaintiff has not previously amended his complaint, the Court will grant Plaintiff leave to file an amended complaint should he so choose.  Plaintiff shall have 28 days from entry of this Memorandum and Order to do so.  In the likely event further briefing of these issues ensues, the Court expects that counsel will to cite to the applicable legal standards and relevant case law.

**SO ORDERED.**

Dated: Central Islip, New York                               s/ Denis R. Hurley
       September 30, 2020                          Denis R. Hurley
                                       United States District Judge