La REDDOLA, LESTER & ASSOCIATES, LLP
Attorneys for Plaintiff
600 Old Country Road, Suite 230
Garden City, New York 11530
(516) 745-1951
rjl@llalawfirm.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------------X

PETER FUSCO,

                        Plaintiff,

         -against-

COUNTY OF NASSAU,
NASSAU COUNTY POLICE DEPARTMENT,
NASSAU COUNTY POLICE COMMISSIONER
PATRICK RYDER, CHRISTOPHER V. TODD, ESQ.,
individually and in his official capacity, "JOHN DOE
#1 - 3", individually and in his official capacity, "JANE DOE
# 1 - 3", individually and in her official capacity,
the last three names being fictitious and unknown
to the plaintiff, but intended to designate parties
with an interest and knowledge of in the facts herein,

                       Defendants.

Case No.:2: 19-cv-04771
(DRH)(AKT)

**AMENDED**
**COMPLAINT**

**Jury Trial Demanded**

--------------------------------------------------------------X

      Plaintiff Peter Fusco, by his attorneys, La Reddola, Lester & Associates, LLP, for

his complaint against the Defendants, alleges:

**NATURE OF ACTION**

      1.      This is a civil rights action for a declaratory judgment, money damages

and injunctive relief, compensatory, punitive and other damages. Plaintiff Peter Fusco

seeks monetary damages under 42 U.S.C. § 1983 for the violation by Defendants of his

Second and Fourteenth Amendment rights related to the revocation of his handgun

1

license and subsequent loss of all firearms[1] rights according to the Nassau County Police Department.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action under 28 U.S.C. § 1331.  This action arises under the Constitution and Laws of the United States and under 28 U.S.C. § 1343(a)(3)-(4) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of New York, of rights, privileges or immunities guaranteed to the Plaintiff under the Second Amendment of the United States Constitution.

3.      Pursuant to New York General Municipal Law §50-e and §50-1, Plaintiff filed a Notice of Claim and more than 90 days have elapsed since the service of the Notice of Claim upon the Defendants and compliance, adjustment or payment thereof has been neglected or refused.  A copy of the Notice of Claim is attached as *Exhibit 1*.

4       Venue in this judicial district is proper under 28 U.S.C. §1391(b), since all of the events and omissions giving rise to the Plaintiff's claims arose in Nassau Country and in this judicial district.  Moreover, upon information and belief, all parties currently reside or maintain offices in Nassau County.

## PARTIES

5.      Plaintiff Peter Fusco ("Plaintiff") is a citizen of Nassau County, residing at 130 Taft Avenue, N. Merrick, New York 11566.

---

[1] The term "firearm" as used throughout this Amended Complaint shall mean a "pistol, revolver or other handgun" consistent with its definition in NYPL § 265.00.

6.      Upon information and belief, Defendant County of Nassau (hereinafter "the County" or "Nassau County") is a duly constituted municipal corporation of the State of New York, existing and operating under and by virtue of the laws of the State of New York.

7.      Upon information and belief, the Defendant Nassau County Police Department (hereinafter "NCPD or Police Department") is an administrative arm of the County with offices located at 1490 Franklin Avenue, Mineola, New York.

8.      Upon information and belief, the Defendant Nassau County Police Commissioner Patrick Ryder, at all relevant times was the commissioner of the Nassau County Police Department with an office located at 1490 Franklin Avenue, Mineola, New York.

9.      Upon information and belief, John Does and or Jane Does, at all relevant times was the Commander of the Pistol License Unit of the Nassau County Police Department, or other party or parties authorized by the Nassau County Police Department to issue the revocation letter on August 31, 2017 revoking Plaintiff's pistol license.

10.      Upon information and belief, Christopher V. Todd, Esq. ("Appeals Officer") is in house counsel for the Nassau County Police Department who issued August 24, 2018 the "Appeals Officer's Findings and Recommendations" and signed the document as "Appeals Officer", which contains multiple errors, omissions and misstatements of fact and law.

11.      Upon information and belief, at all times relevant to the events giving rise to this action, the Defendants "John Does # 1-3", individually and in his official capacity and "Jane Does # 1- 3", individually and in her official capacity, the last three names

3

being fictitious and unknown to the plaintiff, but intended to designate parties with an interest and knowledge of in the facts herein and who may be possible employees of the County of Nassau, Nassau County Police Department, and/or the Nassau County Pistol License Section.

12.     All Defendants herein are being sued in both their official and individual capacities.

### FACTUAL BACKGROUND

13.     During August 2008 Plaintiff and his then-wife, Natalie Fusco, were having matrimonial difficulties.

14.     On January 14, 2010, Plaintiff retired from the NCPD, receiving his retired member's pistol license and "good guy" letter.

15.     In 2014, arising out of the matrimonial difficulties between Plaintiff and his wife, approximately seven domestic incident reports were filed. Four of those reports were filed at the request of Plaintiff for "documentation purposes," based on instructions from his divorce attorney, Robert Mangi, Esq.

16.     On May 5, 2014 Plaintiff's pistol license was suspended.

17.     On or about October 6, 2014, Hon. Ellen R. Greenberg vacated both the Family Offense Petition and the Temporary Orders of Protection that had been issued.

18.     On or about October 8, 2014, Plaintiff wrote to the NCPD requesting that his pistol license suspension be lifted so that he could seek "numerous employment opportunities that require [him] to possess [his] licensed firearms."

19.     Upon information and belief, no response was received, or investigation undertook, in connection with the October 8, 2014 letter.

4

20.     On or about May 8, 2017, the divorce of Plaintiff and Natalie Fusco was finalized.

21.     Plaintiff received sole custody of their son, thus reducing the total amount Natalie Fusco received in child support payments.

22.     Plaintiff later filed contempt charges against his ex-wife on the basis that she refused to allow him to see or speak to his other children, in violation of a Court order.

23.     On or about May 15, 2017, a formal, written request for the return of the surrendered firearms and the reinstatement of the pistol license was made by Plaintiff.

24.     In June 2017, an employee of NCPD Pistol License Section made a telephone call to Natalie Fusco, whom was divorced from Plaintiff three years earlier, to inquire if she consented to the return of the pistol license, and such consent was refused.

25.     Upon information and belief, it is the policy of the NCPD Pistol License Section to seek the approval of the ex-wife prior to returning a pistol license.

26.     Upon information and belief, according to the County policy, if the former spouse or individual who reported the domestic incident does not consent to the return of the pistol license, the pistol license is not returned.

27.     On or about August 31, 2017, Plaintiff's pistol license was changed from "suspended" to "revoked".

28.     The Revocation Letter stated "In the event the NCPD Pistol License Section revokes a license, or a timely-filed appeal concludes and the revocation is upheld by the Appeals Officer, the licensee must wait a minimum of five (5) years from the date or revocation or from the appeal decision upholding revocation, whichever is later, before

5

submitting a new, full application for a pistol license", effectively prohibiting him from owning a handgun for an additional five (5) years. The unsigned Revocation Letter is attached hereto as *Exhibit 2.*

29.     The Revocation Letter also stated, "As directed by NYPL § 400, and the New York State Secure Ammunitions and Firearms Enforcement Act, you are prohibited from possessing firearms, rifles shotguns" effectively barring him from owning any handgun or rifle or shotgun for five years minimum.

30.     On or about September 19, 2017[2], Plaintiff filed an administrative appeal in in writing, in the manner required by the Revocation Letter. (*Exhibit 3*[3], Bates No. 000105).

31.     On or about August 24, 2018, nearly a year later, the NCPD reached a decision and denied the appeal.  (Exhibit 3, Bates No. 000112)

32.     The NCPD Appeal Decision relied heavily on Natalie Fusco's unproven allegations and ignored the Orders of Dismissal of the Family Court proceedings, as well as completely ignoring the requirements for revocation under Penal Law §400.00(11). (*Exhibit 3*, Bates No. 000123)

33.     The Appeal Officer, Christopher V. Todd, Esq., made a Final Determination to concur with the recommendation of the Pistol License Section  to revoke Plaintiff's retired officer police license. (*Exhibit 3*, Bates No. 000009).  The Appeal with attachments is annexed as *Exhibit 3.*

---

[2] Amended on October 11, 2017 to correct government agencies serviced by MSM Security to omit FBI.
[3] Exhibit 3 has been filed under seal.  All references and attachments to this Exhibit are under seal.

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530

34.    The Appeal stated: that, "[e]ven if his wife's allegations are not true, at a minimum they establish that the relationship between Appellant and his wife is a deteriorating, emotionally-volatile one…." *( Exhibit 3, Bates No. 000124)*.

35.    In other words, the determination was not based upon the findings of the Family Court proceeding.

36.    Plaintiff was not given a hearing prior to the Defendants making any of these determinations with regard to his license revocation or the surrender of his firearms, but only a written appeal by letter (*Exhibit 3*, Bates No. 000103).

37.    The Appeal Officer, Christopher V. Todd, Esq., concluded that substantial evidence exists supporting the Pistol License Sections determination to revoke Peter Fusco's retired police officer pistol license:

> In light of the foregoing, it is your writer's finding that substantial evidence exists supporting the Pistol License Section's determination to revoke Appellant Peter A. Fusco's Retired Police Officer pistol license.  His extensive domestic incident  and order or protection history and his multiple violations of the terms and conditions of his pistol license provided the Pistol License Section with "good cause" to support revocation.  Therefore it is hereby recommended that the Pistol License Sections' determination be upheld.  (*Exhibit 3*, Bates No. 000127)

38.    Upon information and belief, no good cause exists to revoke Peter Fusco's pistol license as a matter of law.

39.    "Good cause" is not the standard upon which revocation of a pistol license can be granted under the New York State Penal Law.

40.    Rather, NY Penal Law §400.00 states that "No license shall be issued or renewed except for and applicant… (n) concerning whom no good cause exists for the denial of the license."

7

41.     Regarding revocations, NY Penal Law §400.00(11) states:

License: revocation and suspension. (a) The conviction of a licensee anywhere of a felony or serious offense or a licensee at any time becoming ineligible to obtain a license under this section shall operate as a revocation of the license. A license may be revoked or suspended as provided for in section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act. Except for a license issued pursuant to section 400.01 of this article, a license may be revoked and cancelled at an time in the city of New York, and in the counties of Nassau and Suffolk, by the licensing officer, and elsewhere than in the city of New York by  any judge or justice of a court of record….

42.     Under New York Penal Law §400.00 *et seq.*, the County and the Police Department must administer the rules and regulations regarding pistol licenses limited to granting, revoking and/or reinstating licenses in accordance with New York State Law.

43.     The NCPD Pistol License Handbook states the following regarding license suspension, revocation and downgrade:

Pursuant to NYSPL § 400.00(11), a pistol license issued by the Nassau County Police Department may be revoked and cancelled by the Commissioner of Police **at any time**. Furthermore, a person whose pistol license is suspended or revoked **for any reason** is required to surrender their license and firearms, including their rifles and shotguns, to the NCPD Pistol License Section. In the event a license is downgraded, a licensee *must* comply with any and all rules and regulations applicable to their new pistol license status.

[Bold emphasis added]

44.     The NCPD Pistol License Handbook states the following regarding automatic revocation, in the relevant part:

A pistol license shall be automatically revoked in the following circumstances:

a. In the event a licensee is named as the respondent in a permanent Order of Protection;
b. Upon the Conviction of a licensee anywhere of a felony or serious offense;
c. Upon the conviction of a licensee of a misdemeanor crime of domestic violence; or
d. The licensee is deemed not mentally fit.

8

45.     The NCPD Pistol License Handbook states the following regarding non-automatic revocation and suspension, in part:

> A pistol license may be suspended and/or revoked based upon evidence of any disqualification pursuant to this Handbook or applicable law. The policy of the Nassau County Police Department is to *immediately suspend* the pistol license of any licensee who violates any of the terms and conditions of the license of this Handbook and commence an investigation to determine whether or not the license should be revoked. Violations of the terms and conditions of the pistol license include, but are not limited to:
> ...
> c. The licensee is the subject of a Court Order restraining him or her from harassing, stalking, threatening or engaging in any acts of physical violence directed towards another person;
>
> d. Report of any domestic involving a licensee where violence is threatened or alleged to have occurred or the existence of a volatile domestic situation....

46.     As stated above, the County and the Police Department were incorrect in applying the "good cause" standard to a revocation, as it only applies to an initial denial.

47.     Neither the "automatic circumstances" nor "non automatic circumstances" set forth in the Pistol License Handbook apply to Fusco. There was no current Court Order, and the "volatile domestic situation" had subsided long ago following the divorce, and amounted to nothing after all, meaning there were no circumstances upon which the County and Police Department could issue the revocation to Plaintiff under Penal Law § 400, or the Defendants' own handbook, or suspend his right to own and possess a rifle or shotgun.

## New York's Pistol License Regime

48.     *District of Columbia v. Heller* indicates that the Second Amendment, at the very least, "elevates above all interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home. *District of Columbia v. Heller*, 128 S.Ct. 2783, 2821.

9

49.     "Under any of the standards of scrutiny that…have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to keep and use for protection of one's home and family would fail constitutional muster.'" *District of Columbia v. Heller*, 128 S. Ct. 2783 at 2817-2818.

50.     The Court of Appeals has expanded upon this core right, stating that "Although the Supreme Court's cases applying the Second Amendment have arisen only in connection with prohibitions on the possession of firearms in the home, the Court's analysis suggests, as Justice Steven's dissent in *Heller* and Defendants in this case before us acknowledge, that the Amendment must have *some* application in the very different context of the public possession of firearms. *Kachalsky v. County of Westchester*, 701 F.3d 81, 89 (2012).

51.     New York State's licensing scheme for handguns follows this logic, applying a "shall issue" standard for handguns in the home, and a "proper cause" standard for handguns in public.

52.     Penal Law §400.00 differentiates handgun licenses into one of two categories: premise licenses and concealed carry licenses. A license of either type is required to purchase or possess a handgun.

53.     A premise license is issued under §400.00(2)(a), whereas the concealed carry license is issued pursuant to §400.00(2)(f).

54.     Penal Law §400.00(2)(a) states that "A license for a pistol or revolver… shall be issued to (a) have and possess in his dwelling by a householder…."

10

55.     Penal Law §400.00(2)(f) states that "A license for a pistol or revolver...

shall be issued to (f) have and carry concealed, without regard to employment or place of

possession, by any person when proper cause exists for the issuance thereof...."

56.     The New York State Legislature has differentiated the standards for the

two licenses: the standard for a premise license is "shall issue," whereas the standard for

a concealed carry license is "proper cause," or "may issue," colloquially.

57.     The "proper cause" standard is defined as "a special need for self-

protection distinguishable from that of the general community or of persons engaged in

the same profession." *Klenosky v. N.Y.C. Police Dep't,* 428 N.Y.S.2d 256, 257 (N.Y.

App. Div. 1980)).

58.     Upon information and belief, there is no provision of the Penal Law, or

any other New York Law, which addresses prohibiting or permitting  open carry of a

handgun.

59.     Rather, the only license to carry that is issued by New York State

designates the type of pistol carry as "concealed," effectively banning open carry of

handguns.

60.     Upon information and belief, New York State is the only state in the

Union to entirely ban open carry licenses, (*i.e.,* while hunting or on one's own property)

while simultaneously enacting a "proper cause" standard for concealed carry licenses.

61.     Penal Law §400.00 contains a preemption of local laws related to the

issuance of pistol license.

62.     According to Penal Law §400.00, Section 6:

Any license issued pursuant to this section shall be valid **notwithstanding
the provisions of any local law or ordinance**.  No license shall be

11

transferable to any other person or premises. **A license to carry or possess a pistol or revolver, not otherwise limited as to place or time of possession, shall be effective throughout the state,** except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city.

63.     This limitation on the authority of the Nassau County Police Commissioner has meant that, notwithstanding the local limitations in Nassau County imposed on pistol license owners, a license to carry or possess a pistol or revolver issued in Nassau County is treated throughout the state as a traditional New York State concealed carry license under Penal Law §400.00(2)(f).

64.     So too, Penal Law §400.00(2)(f) "proper cause" pistol licenses issued upstate are valid in Nassau County without restriction.

65.     Upon information and belief, there is no license requirement for a rifle or shotgun in Nassau County or New York State.

### The NCPD Pistol License Scheme is Unlawful Under Penal Law §400.00
### The County's Present Pistol License Program

66.     The issuance of a Pistol License in New York State is governed by Penal Law Penal Law §400.00 *et seq*.

67.     Nassau County's pistol license "scheme" is in direct contradiction to that which is outlined in §400.00 *et seq*.

68.     The County local policy has a poor fit to public safety and is both excessive and imprecise.

69.     The County has created a local policy aimed to reduce the overall firearm ownership of Nassau County citizens.

70.     This policy is effectuated by at least six actions:

12

a.      the County incorrectly interprets the language within Penal Law §400.00(11) ("at any time") to allow the County to revoke a pistol license "for any reason";

b.      the County, after suspending a license, fails to immediately review the suspension;

c.      the County bans all Second Amendment rights upon the revocation of a pistol license by barring ownership and possession of rifles and shotguns

d.      the County prohibits all residents from receiving a "shall issue" premise license under §400.00(2)(a);

e.      the County reviews all pistol licensees every five years, instead of New York State; and

f.      the County arbitrarily refuses to consider applications for five years f ollowing a revocation.

71.     The  policy is intended to reduce the total number of pistol licenses and firearm ownership within Nassau County, by discouraging, limiting and deterring legal ownership of handguns and by decreasing licenses issued by Nassau County.

**The First Challenged Restriction: Failure to Follow NYPL § 400.00(11)**

72.     The County has a policy to reduce the total number of pistol licenses and firearm ownership within Nassau County, by discouraging, limiting and deterring legal ownership of handguns and by decreasing County issued licenses.

73.     The County accomplishes this policy by, *inter alia*, revoking handgun licenses for "any reason," rather than the enumerated reasons under NYPL § 400.00(11).

13

74.     This is a violation of both the Second Amendment and the Fourteenth Amendment of the United States Constitution, as well as the New York State Constitution.

75.     NYPL § 400.00(11)(a) sets forth that:

> The conviction of a licensee anywhere of a felony or serious offense or a licensee at any time becoming ineligible to obtain a license under this section shall operate as a revocation of the license. A license may be revoked or suspended as provided for in section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act. Except for a license issued pursuant to section 400.01 of this article, a license may be revoked and cancelled at an time in the city of New York, and in the counties of Nassau and Suffolk, by the licensing officer, and elsewhere than in the city of New York by any judge or justice of a court of record….

76.     As stated in NYPL § 400.00(11), there are four enumerated "events" that can trigger a revocation of a license (herein referred to as a "triggering event.").

**A.  The First Triggering Event**

77.     The first triggering event is the conviction of a felony or a serious offense.

78.     NYPL § 55.10 defines a "felony" as those offenses "expressly designated" as a felony, as well as those offenses which provide "a sentence to a term of imprisonment in excess of one year…."

79.     NYPL § 265.00(17) sets forth the list of offenses defined in the penal law that are to be considered "serious offenses."

80.     The first triggering event is limited to a conviction of one of these defined offenses.

**B.  The Second Triggering Event**

81.     The second triggering event is a licensee becoming "ineligible" for a license.

14

82. The terms "eligible," "eligibility," ineligible," and "ineligibility," are not defined in NYPL § 400.00, or subsequent sections.

83. However, those terms have been used by various courts in analyzing NYPL § 400.00.

84. Those terms can therefore be defined by their usage.

85. In *Osterweil v. Bartlett*, the Court of Appeals examined whether "an applicant who owns a part-time residence in New York, but makes his permanent domicile elsewhere, [is] **eligible** for a New York handgun license in the city of the county where his part-time residence is located?" 21 N.Y.3d 580, 977 N.Y.S.2d 153 (2013) (emphasis added). The Court of Appeals ultimately decided that a part-time resident is **eligible** for a license. *See id.*

86. In *Bach v. Pataki*, the Northern District of New York examined whether a non-resident without significant contacts with New York State was eligible for a license. The court ultimately embraced the State defendants' interpretation of NYPL § 400.00 and NYPL § 265.00, that "a variety of persons with significant contacts with the State, therefore, are statutorily **eligible** to apply for a permit, namely New York residents and non-residents who have their principal place of employment or principal place of business as a merchant or storekeeper in New York." 289 F.Supp.2d 217 (N.D.N.Y. 2003) affirmed 408 F/3d 75, cert. denied 126 S. Ct. 1341. 546 U.S. 1174. (emphasis added).

87. Thus, in light of the caselaw, "eligibility" is defined as being a New York State resident, or a non-resident with significant contacts in the State.

88. Accordingly, the second triggering event is limited to a licensee becoming a non-resident without significant contacts with New York.

15

89.     Under NYPL § 400.00(11), the first two triggering events "shall operate as a revocation of the license," leaving no discretion to the court.

90.     This is contrasted with the third and fourth triggering events, for which a license "may be revoked or suspended...."

91.     Both Crim. Pro. Law §§ 530.14 and NY Fam. Ct. § 842-a use the language "to order the defendant ineligible for a license."

92.     "Ineligible" status designates the temporary condition of the individual being prohibited from applying for or holding a pistol license.

93.     Under Crim. Pro. Law §§ 530.14 and NY Fam. Ct. § 842-a, the ineligible status lasts for the duration of the temporary order of protection or the order of protection.

94.     Likewise, a non-resident without significant contacts with New York State is under the ineligible status as long as the non-resident is not employed in New York.

95.     This was explained before the Eastern District of New York by State Attorney Susan M. Connolly,

> Your Honor, he [Plaintiff Razzano] is revoked [*i.e.*, barred from owning a handgun], not ineligible [to own an unlicensed shotgun or rifle]. He admits that none of the disqualifying factors in State or federal law apply to him; no mental health conditions, he doesn't have an Order or Protection against him, he hasn't been convicted of a serious offense or felony. If any of those things were true about Mr. Razzano, he would be ineligible and he wouldn't be able to own any weapon in any case regardless of the SAFE Act because of the federal and State law. But he admitted none of those factors apply to him, therefore, he is not ineligible.
>
> He would like his interpretation of ineligibility to be accepted by the Court. Revocation doesn't equal ineligible. You can be revoked from having a permit to carry a weapon because of your business. Let's say you are a jeweler, you stop being a jeweler, your permit for carrying a weapon gets revoked.
>
> *Razzano v. State of New York*, 14-CV-1864 (LDW) (E.D.N.Y. 2014)
> Dkt. 45-4, Transcript of April 14, 2014, p. 6, lines 7-23).

16

96.     Eligibility under NYPL § 400.00(11) is a temporary status condition, applying to those individuals that cannot apply for or hold a license at the time, due to an order of protection in effect or employment and residency status.

**C. The Third Triggering Event**

97.     The third triggering event is set forth in framework found in Crim. Pro. Law § 530.14.

98.     Crim. Pro. Law § 530.14 differentiates between orders of protection issued under the different subdivisions of Crim. Pro. Law §§ 530.12 and 530.13.

99.     Temporary orders of protection are issued pursuant to § 530.12(1) or § 530.13(1), and allow a court to **suspend** the license, order the defendant ineligible for a license, and order the immediate surrender of any or all firearms, rifles and shotguns owned or possessed when:

    a.  the court has good cause to believe that:

        i.  the defendant has a prior conviction of a violent felony, or

        ii.  if the defendant has willfully failed to obey a prior order of protection, and such willful failure involved (1) infliction of physical injury, (2) use or threatened use of a deadly weapon of dangerous instrument, or (3) behavior constituting any violent felony offense, or

        iii.  if the defendant has a prior conviction for stalking.

    b.  Or if the court finds a substantial risk that the defendant may use or threaten to use a firearm rifle, or shotgun unlawfully against the person whom is the subject of the temporary order.

17

100.    Non-temporary orders of protection are issued pursuant to § 530.12(5) or § 530.13(4), and allow a court to **suspend or revoke** the license, order the defendant ineligible for a license, and order the immediate surrender of any or all firearms, rifles and shotguns owned or possessed when:

      a.    The court finds a substantial risk of unlawful use or threat of unlawful use against the protected person.

101.    Crim. Pro. Law § 530.14(3) allows for the court to **revoke or suspend** a license, order the defendant ineligible, and order the surrender of any or all firearms and longarms when:

      a.    The court finds the defendant willfully failed to obey an order of protection, involving the infliction of physical injury, the use of threatened use of a deadly weapon, or any behavior constituting a violent felony, or behavior constituting a stalking in the first, second, third, or fourth degree.

102.    Furthermore, Crim. Pro. Law § 530.14(4) limits suspension to the duration of the temporary order of protection or order of protection, unless modified.

103.    Crim. Pro. Law § 530.14(5) specifies that the temporary order of protection must specify a place, date, and time for the voluntary suspension to take place.

104.    Crim. Pro. Law § 530.14(6) requires the temporary order of protection to give notice to the defendant of the suspension.

105.    Crim. Pro. Law § 530.14(7) grants the defendant the right to a hearing regarding any revocation, suspension, ineligibility, surrender, or seizure that occurs.

18

**D. The Fourth Triggering Event**

106.     The fourth triggering event is set forth in framework found in NY Fam. Ct. § 842-a.

107.     NY Fam. Ct. § 842-a follows the framework of Crim. Pro. Law § 530.14.

108.     Under NY Fam. Ct. § 842-a(1), a temporary order of protection may result in a suspension if the court finds good cause or a substantial risk, mirroring Crim. Pro. Law § 530.14(1).

109.     Under NY Fam. Ct. § 842-a(2), an order of protection may result in suspension or revocation where the court finds that the order resulted from conduct involving the infliction of physical injury, the use or threatened use of a deadly weapon, or any violent felony offense, or if there is a substantial risk of such conduct, mirroring Crim. Pro. Law § 530.14(2).

110.     NY Fam. Ct. § 842-a(3) allows a court to revoke or suspend a license for the willful failure to obey an order of protection or temporary order of protection, mirroring Crim. Pro. Law § 530.14(3).

111.     Likewise, NY Fam. Ct. § 842-a mirrors Crim. Pro. Law § 530.14 in regards to duration of a suspension, specification of time and place of surrender, notice, and a hearing.

**E. The County Ignored NYPL § 400.00(11) and the Triggering Events**

112.     Plaintiff Fusco's license was not revoked pursuant to any one of the four triggering events.

113.     At all times herein, Plaintiff was a resident of New York State, and therefore "eligible."

19

114.    Therefore, the first triggering event does not apply.

115.    Plaintiff Fusco has never been convicted of a felony or a serious offense.

116.    Therefore, the second triggering event does not apply.

117.    Plaintiff Fusco has never been the subject of a temporary order of protection or order of protection pursuant to Crim. Pro. Law § 530.14.

118.    Therefore, the third triggering event does not apply.

119.    Plaintiff Fusco was the subject of an ex parte temporary order of protection from August 28, 2014 to October 6, 2014.

120.    The temporary order of protection was issued by Hon. Edmund M. Dane on August 28, 2014, upon the ex parte application of Plaintiff's former wife.

121.    The temporary order of protection was vacated by Hon. Ellen R. Greenberg on October 6, 2014, upon application by the Plaintiff.

122.    The temporary order of protection was issued pursuant to NY Fam. Ct. § 828.

123.    The temporary order of protection did not suspend Plaintiff's handgun license.

124.    The temporary order of protection did order the Plaintiff to surrender any and all handguns, rifles, and shotguns owned or possessed by Plaintiff.

125.    However, Plaintiff had already voluntarily surrendered his firearms on March 10, 2014, prior to the temporary order of protection being issued, due to the advice of his divorce attorney.

126.    The divorce was finalized on May 8, 2017, several years later.

20

127.    On May 15, 2017, after the finalization of the divorce, Plaintiff requested his firearms be returned.

128.    The County refused to do so, and instead **revoked** Plaintiff's license on August 31, 2017.

129.    In 2019, the Defendants forced the Plaintiff to sell the police service handguns that Plaintiff kept after his retirement, as well as the other handguns owned by Plaintiff.

130.    Defendants were in possession of those handguns since Plaintiff's voluntary surrender in 2014.

131.    If Plaintiff did not sell the handguns, Defendants informed him that they would be destroyed.

132.    At all times the Family Court declined to suspend or revoke Plaintiff's license and elected not to remove firearms by selecting Box 12 of the Temporary Order of Protection Form.

133.    Furthermore, the NY Fam. Ct. § 842-a(1) only permits suspension, not revocation, of a license when a temporary order of protection is granted.

134.    The Plaintiff is not "ineligible" or otherwise barred under NYPL § 400.00.

135.    The County ignored NYPL § 400.00(11) and NY Fam. Ct. § 842-a altogether and revoked the license several years after the temporary order of protection was vacated and the Plaintiff's divorce was finalized.

136.    The County has exceeded any power granted to it by NYPL § 400.00(11) as a "licensing" body, by creating new grounds for revocation such as "at any time."

21

137.    The Defendants interpret the language "at any time" to mean "for any reason."

138.    This interpretation is incorrect.

139.    "At any time" indicates when a revocation can occur, *i.e.,* the Defendants do not have to wait for the next recertification (occurring every five years) to revoke the license of an ineligible licensee.

140.    For example, if a licensee changes residency and does not maintain significant contacts with New York State, the licensing officials can revoke the license immediately, as opposed to waiting for the next recertification.

141.    "At any time" does not mean "for any reason."

142.    The Defendants are limited to the four triggering events enumerated in NYPL § 400.00(11).

143.    The Defendants do not have broad discretion to ignore the four triggering events, or create new triggering events.

144.    This authority is not granted to the County under NYPL § 400.00.

145.    The Defendants exceed their authority when they revoke a license absent one of the four triggering events.

146.    This is in furtherance of Defendants' policy to reduce the total number of pistol licenses and firearm ownership within Nassau County, by discouraging, limiting and deterring legal ownership of handguns and by decreasing licenses issued by Nassau County.

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530

**The Whistleblower Affidavit Supports the Existence of This Challenged Action**

147.    The sealed Whistleblower Affidavit, attached hereto as *Exhibit 5*, sets forth first-hand details about the Defendants' added grounds for revocation outside of NYPL § 400.00(11).

148.    The Pistol License Handbook, as of September 9, 2020, states that, "upon notification of any domestic situation where violence is threatened or alleged to have occurred or upon notification of the existence of a volatile domestic situation, the Nassau County Police Department will require the surrender of the pistol license and firearm(s) as well as rifles and shotguns of any involved licensee pending an investigation into the facts and circumstances of the domestic incident and ongoing domestic relations of the licensee and other involved party(ies)." *Exhibit 5*, paragraph 17.

149.    The Handbook also stated that when an order of protection or a temporary order of protection is issued, "[t]he license will remain suspended until the Order expires or is vacated by the issuing court, and a thorough investigation is completed." *Id.*

150.    The Whistleblower states that, "this policy appears to ignore the Family Court system entirely." *Exhibit 5*, paragraph 20.

151.    The Whistleblower also states that, "a 'volatile domestic situation' does not invoke any issues under the Family Court Act or Penal Law Section 400." *Exhibit 5,* paragraph 19.

**The Second Challenged Restriction: Failure to Promptly Review**

152.    The County has a policy to reduce the total number of pistol licenses and firearm ownership within Nassau County, by discouraging, limiting and deterring legal ownership of handguns and by decreasing licenses issued by Nassau County.

23

153.    The County accomplishes this policy by, *inter alia*, failing to promptly review suspended licenses, revoked licenses on appeal, or conduct hearings for the deprivation of property.[4]

154.    This is a violation of both the Second Amendment and the Fourteenth Amendment of the United States Constitution, as well as the New York State Constitution.

155.    A licensee who is suspended or revoked under Crim. Pro. Law § 530.14 or NY Fam. Ct. § 842-a has a right to a prompt post-deprivation hearing regarding the return of his handguns, rifles and shotguns.

156.    The Defendants do not conduct hearings following a revocation and the surrender or seizure of handguns, rifles or shotguns.

157.    The Defendants delay the review of suspended licenses, in order to extend the period by which a licensee does not have a license in effect.

158.    Upon revocation of a license, Defendants delay the appeal process for a year or more, in order to extend the period by which a licensee does not have a license in effect.

159.    This is in furtherance of Defendants' policy to reduce the total number of pistol licenses and firearm ownership within Nassau County, by discouraging, limiting and deterring legal ownership of handguns and by decreasing licenses issued by Nassau County.

---

[4] *See Krimstock v. Kelly*; 306 F.3d 40 at 57 (2nd Cir. 2002), and *Razzano*, 765 F.Supp.2d 176, 190-191 (E.D.N.Y. 2011).

24

**The Third Challenged Restriction: Total Deprivation of Second Amendment Rights**

160.     The County has a policy to reduce the total number of pistol licenses and firearm ownership within Nassau County, by discouraging, limiting and deterring legal ownership of handguns and by decreasing licenses issued by Nassau County.

161.     The County accomplishes this policy by, *inter alia*, prohibiting the exercise of all Second Amendment rights upon the revocation of a handgun license.

162.     This is a violation of the Second Amendment of the United States Constitution, as well as the New York State Constitution.

163.     In November or December of 2014 Plaintiff contacted the Defendants, and was advised by Sgt. Adam Fischer that Plaintiff was prohibited from owning rifles or shotguns.

164.     In 2015, Plaintiff contacted his assigned case officer, James Imperiale and Sgt. Fischer, and again was informed that Plaintiff was prohibited from owning rifles or shotguns.

165.     In 2016, Plaintiff contacted James Imperiale and Lt. Marc Timpano, and for a third time was informed that Plaintiff was prohibited from owning rifles or shotguns.

166.     On August 31, 2017, Plaintiff received a letter from the Defendants stating that his license was revoked.

167.     The letter continued to state that, "As directed by New York State Penal Law section 400, and the New York State Secure Ammunitions and Firearms Enforcement Act, you are prohibited from possessing firearms, rifles, and shotguns.

168.     On February 15, 2019, the Defendants issued a second letter to Plaintiff's attorney, Robert J. La Reddola, Esq., indicating that the Plaintiff "was prohibited from

25

possessing firearms, rifles, and/or shotguns at the time of revocation...." The February 15, 2019 letter is attached hereto as *Exhibit 4.*

169.     The letter continues on to state that, "Mr. Fusco cannot possess rifles and/or shotguns if a legal impediment exists prohibiting such possession. Please be advised the Pistol License Section is unaware of any such legal impediment prohibiting Mr. Fusco from possessing rifles and/or shotguns." *Exhibit 4.*

170.     This is a change from the prior position of the Defendants, that Mr. Fusco was barred from ownership of rifles and shotguns.

171.     On February 5, 2020, the Defendants stated in their motion to dismiss that, "Plaintiff is free to obtain rifles and shotguns following the revocation by the Police Department and confiscation of his pistol. In other words, plaintiff is not prohibited from owning rifles and shotguns, but only pistols, following revocation of his pistol license." Memorandum of Law in Support of Motion to Dismiss, page 13.

172.     This statement contradicts the February 15, 2019 letter, because now Plaintiff can allegedly possess rifles and shotguns following the revocation.

173.      However, on reply in the same motion to dismiss, the Defendants reversed their position again, reverting to the language contained in the August 31, 2017 letter: "The clear, unambiguous language set forth under New York Penal Law § 400.00 (11)(c) statutorily mandates the revocation of an individual's privilege to possess handguns, rifles, and/or shotguns upon revocation of his pistol license." Memorandum of Law in Further Support of the Motion to Dismiss, page 4.

174.     Furthermore, on September 9, 2020, the Defendants issued a revised Pistol License Section Handbook.

26

175.   The revised handbook states that, "upon notification of any domestic situation where violence is threatened or alleged to have occurred or upon notification of the existence of a volatile domestic situation, the Nassau County Police Department will require the surrender of the pistol license and firearm(s) *as well as rifles and shotguns* of any involved licensee pending an investigation into the facts and circumstances of the domestic incident and ongoing domestic relations of the licensee and other involved party(ies)."

176.   Once again, the Defendants have reversed their position on the *de facto* licensing scheme for longarms. Defendants have therefore continuously issued confusing and inconsistent directives that leave Plaintiff's ability to acquire longarms in serious doubt.

177.   On October 14, 2020, Robert Van der Waag, Esq., represented to the Second Circuit in *Henry v. County of Nassau* that, "If I misspoke there I apologize, originally that was the position of the county, but the county's position is and has been that notwithstanding 400 subsection 11, which speaks specifically to surrendering all firearms, the county's position is he is free, assuming that he is under no other impediment that I know of, to purchase longarms."

178.   While the Defendants maintain one position to the courts, they proffer a contradicting position to the licensees residing in Nassau County, as far as the revocation letters and handbook are concerned. Again, this action is designed to reduce, discourage, limit and deter Nassau County residents from applying for a handgun license.

179.   Under New York law, rifles and shotguns are not licensed.

27

180.   Thus, law-abiding Nassau County residents enjoy the exercise of the Second Amendment regarding longarms without the involvement of the Defendants.

181.   This enables Nassau County residents to go target shooting, skeet and trap shooting, and hunt, without prescription.

182.   However, once a resident applies for a pistol license, all of his firearms, including unlicensed longarms, become subject to  revocation "at any time" or "for any reason".

183.   Nassau County residents issued licenses from Nassau County face a potential total ban on all Second Amendment exercise, whereas a Nassau County resident who exercises his Second Amendment rights but does not have a County issued license does not face a total ban.

184.   Likewise, a Nassau County resident that is issued a license from any other New York county, can exercise his Second Amendment right to concealed carry without the threat of the total ban.

185.   This is because any Nassau County resident, with a second home in a different county, can apply for the New York concealed carry license with the licensing official of the other county, rather than Nassau County.

186.   Nassau County does not have the authority to revoke the license issued by the other county, nor are the Defendants even aware of the license without a request to New York State.

187.   The total ban that Nassau County residents face when issued a license by the Defendants is further complicated by the constant re-posturing by the Defendants in lawsuits, as during the *Henry* oral argument.

28

188.    The *Henry* admission during oral argument by the Defendants, is not a mistake.

189.    Rather, it is the tactic of the Defendants to "backpedal" when sued, but never reform. The County decides to pay or settle, but never reform.

190.    In *Razzano v. State of New York*, 14-CV-1864 (LDW) (E.D.N.Y. 2014), a case seeking a Temporary Injunction of Penal Law Section 400.00(11) "at any time" and "for any reason" language were denied the Temporary Restraining Order by Justice Wexler on the representations of the State Attorney General's Office and The Nassau County Attorney's Office.

191.    David A. Tauster, Esq., representing Nassau County, set forth in his papers that a license revocation acted to prohibit the licensee from possessing all firearms, rifles and shotguns, as in the present case.

192.    At oral argument, however, Mr. Tauster apologized for the "misstatement":

> I have to apologize to the Court, to my adversaries. I misspoke in the County papers. I think I clarified it later. But in any event, the issue is not so much whether an individual is not entitled to possess a license pursuant to the SAFE Act by the local licensing officials, it's whether you are ineligible pursuant to the statutory factors set forth in the penal law and federal law. The idea is not so much that Nassau County can revoke somebody's pistol license and forever prohibit [that individual] from possessing longarms. If one of the mandatory factors occur under the federal law in the first instance, further under State law, the individual would not have been entitled to possess a weapon. The County is not saying that the statute operates under Nassau County standards but pursuant to the State standards. It's a misstatement of the law in our papers and I apologize to the Court. (Dkt. 45-4, Transcript of *Razzano v. State of New York* April 14, 2014, p. 6, lines 7-23).

193.    It is impossible to be aware of the Defendants' current position on licensee's longarms at any given time.

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530

194.     This is in furtherance of Defendants' policy to reduce the total number of pistol licenses and firearm ownership within Nassau County, by discouraging, limiting and deterring legal ownership of handguns and by decreasing licenses issued by Nassau County.

**The Whistleblower Affidavit Supports the Existence of This Challenged Action**

195.     The sealed Whistleblower Affidavit sets forth in depth details about the Defendants' total ban of all firearms, rifles, and shotguns upon a handgun license revocation.

196.     The affidavit sets forth that, "the Nassau County Police has been claiming that they may revoke a pistol license 'at any time' and confiscate all rifles and shotguns of the former licensee as a result, absent any other judicial debarment process." *Exhibit 5*, paragraph 10.

197.     It also sets forth that, "the County appears to admit that one may purchase new rifles or shotguns, and that NYSPL 400.00(11) is merely a restatement of Federal Law." *Exhibit 5*, paragraph 12.

198.     The affidavit sets forth that, "the proper procedure for barring a person from purchasing additional rifles and shotguns in the future after such were seized with good cause by any law enforcement agency in NYS would be for that agency to notify the local District Attorney. The District Attorney would notify the NYS DCJS who would add this person to their database of persons barred from possessing all firearms." *Exhibit 5*, paragraph 15.

30

199.     Following notification to the District Attorney, the "District Attorney would also have to ensure that due process was provided by the law enforcement agency to the individual in the form of a pre-deprivation hearing." *Id.*

200.     The Whistleblower asked the Defendants' Legal Bureau if such a conversation occurs with the District Attorney's office, and never received a reply. *Exhibit 5,* paragraph 16.

### The Fourth Challenged Restriction: Failure to Issue Home Premise Licenses

201.     Under NYPL § 400.00(2), two types of licenses are issued by New York State and the licensing officials.

202.     The first class of license is found in NYPL § 400.00(2)(a).

203.     This license is to "have and possess [a handgun] in his dwelling by a householder."

204.     This "home premise" license is issued under a "shall issue" standard.

205.     The "shall issue" standard places the burden on the Defendants to find that "good cause exists for the denial of the license."

206.     The second type of license is found in NYPL § 400.00(2)(f).

207.     This license is to "have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof."

208.     This "concealed carry license" is issued under a "proper cause" standard, as opposed to the "shall issue standard" applied to a home premise license.

209.     "Proper cause" shifts the burden onto the applicant, who must "demonstrate a special need for self-protection distinguishable from that of the general community or of

31

persons engaged in the same profession." *See Klenosky v. New York City Police Dept.*, 75 A.D.2d 793, 428 N.Y.S.2d 256.

210.    The "proper cause" standard is much more burdensome standard for an applicant to meet.

211.    The Defendants only allow for applicants to apply for "concealed carry" licenses.

212.    The Defendants do not allow for applicants to apply for a "home premise" license.

213.    This is a violation of the Second Amendment of the United States Constitution, as well as the New York State Constitution.

214.    Upon information and belief, there is not a single outstanding "home premise" license issued in Nassau County.

215.    The Defendants fail to issue "home premise" licenses, so that the burden will always shift to the applicant to demonstrate "proper cause," a standard that very few applicants will meet, without being politically connected.

216.    This makes it demonstrably harder to successfully apply for a license.

217.    A "home premise" license is available in every other county in New York State, including the counties of New York City.

218.    Upon information and belief, a "home premise" license is only unavailable to Nassau County residents.

219.    Plaintiff cannot apply for a home premise license, nor could his license be downgraded to a home premise license, which would allow him to retain his handguns.

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530

220.     This is in furtherance of Defendants' policy to reduce the total number of pistol licenses and firearm ownership within Nassau County, by discouraging, limiting and deterring legal ownership of handguns and by decreasing licenses issued by Nassau County.

**The Whistleblower Affidavit Supports the Existence of This Challenged Action**

221.     The sealed Whistleblower Affidavit sets forth in depth details about the Defendants' refusal to issue "home premises" licenses, which it is mandated to do pursuant to NYPL § 400.00(2)(a).

222.     The affidavit sets forth that, "Nassau County does not offer a premise pistol license even though they are required to do so as per NYS Penal Law 400.00(2) as well as recent Supreme Court cases." *Exhibit 5*, paragraph 42.

**The Fifth Challenged Restriction: "Renewal" of Licenses by the County**

223.     Under NYPL § 400.00(10)(a), the term "renewal" applies only to licensed gunsmiths or firearm dealers, who must submit photographs and fingerprints "on original applications and upon **renewal** thereafter only at **six** year intervals." (emphasis added).

224.     This is the only time the phrase "renewal" appears in NYPL § 400.00.

225.     Under NYPL § 400.00(10)(b), "all licenses shall be recertified to the division of state police every five years thereafter."

226.     There is no "carve-out" for recertifications in Nassau County under NYPL § 400.00(10)b.

227.     The Defendants, in their handbook, obfuscate this process by referring to recertifications as a "renewal," which must occur every five years.

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530

228.     In this manner, the Defendants can personally review every Nassau County license by hand, rather than New York State reviewing the recertifications.

229.     This results in all Nassau County licenses being returned at the discretion of the Defendants.

230.     The Defendants can then revoke the licenses during the recertification process.

231.     This is a violation of both the Second Amendment and the Fourteenth Amendment of the United States Constitution, as well as the New York State Constitution.

232.     This is in furtherance of Defendants' policy to reduce the total number of pistol licenses and firearm ownership within Nassau County, by discouraging, limiting and deterring legal ownership of handguns and by decreasing licenses issued by Nassau County.

**The Whistleblower Affidavit Supports the Existence of This Challenged Action**

233.     The sealed Whistleblower Affidavit sets forth in depth details about the Defendants' self-administered renewal/recertification process.

234.     The affidavit sets forth that, "[t]he County should not be renewing license renewals at all. Under Penal Law Section 400 this is a matter for the State Police." *Exhibit 5*, paragraph 61.

235.     It also sets forth that, "[a]llowing the County to review renewals permits the County to apply local policy changes like the 'volatile domestic situation' rule to current licensees up for renewal who are otherwise qualified for a state pistol license." *Exhibit 5*, paragraph 62.

34

**The Sixth Challenged Restriction: Five-Year Debarment Period**

236.    The Nassau County Pistol License Section Handbook states that, "In the event the NCPD Pistol License Section revokes a license, or a timely-filed appeal concludes and the revocation is upheld by the Appeals Officer, the licensee must wait a minimum of five (5) years from the date of the revocation by the PLS before submitting a new, full application for a pistol license."

237.    This is a violation of the Second Amendment of the United States Constitution, as well as the New York State Constitution.

238.    This language was repeated, *verbatim*, in the revocation letter received by the Plaintiff on August 31, 2017.

239.    There is no basis for this five-year waiting period in NYPL § 400.00, or any other state law.

240.    It is purely a contrivance of the Defendants not authorized by law.

241.    Because the five-year waiting period restarts the "clock" upon the conclusion of an appeal, this deters licensees from appealing revocations.

242.    After receiving his revocation letter, dated August 31, 2017 (although it was not received until September 19, 2017), Plaintiff requested an appeal of the revocation on September 26, 2017.

243.    Plaintiff was provided with an appeal form on October 10, 2017 and submitted the paperwork on October 19, 2017.

244.    However, the final determination of the appeal was not determined until August 24, 2018, nearly an entire year after the revocation letter.

35

245.    Thus, the lengthy appeal process extended the disbarment period from five years to six years.

246.    There is almost no valid reason for an applicant to actually appeal a revocation, as it will result in a longer disbarment period and there is no chance of success.

247.    This is in furtherance of the Defendants' policy to reduce the total number of pistol licenses and firearm ownership within Nassau County, by discouraging, limiting and deterring legal ownership of handguns and by decreasing licenses issued by Nassau County.

248.    In sum, Nassau County enforces these challenged restrictions under color of law in order to unconstitutionally limit gun licenses within Nassau County.

**The Whistleblower Affidavit Supports the Existence of This Challenged Action**

249.    The sealed Whistleblower Affidavit sets forth in depth details about the Defendants' self-created five year waiting period to reapply following a license revocation.

250.    The affidavit sets forth that, "[c]urrently, the Nassau County Police Department Pistol License Section does not allow a person to re-apply for a new pistol license for five (5) years after that person's pistol license is revoked." *Exhibit 5*, paragraph 51.

251.    It also sets forth that, "[b]eing forced to wait (5) years to re-apply for a new pistol license after it was revoked is outside of NYS Penal Law section 400.00 which governs pistol licenses issued within NYS." *Exhibit 5*, paragraph 52.

252.    It also sets forth that, "[n]owhere within NYS Penal Law section 400.00 does it give the Nassau County Police Department or any jurisdiction within NYS the

36

authority to impose a debarment period to re-apply for a new pistol license after their pistol license has been revoked." *Exhibit 5*, paragraph 54.

### FIRST CAUSE OF ACTION

**42 U.S.C. § 1983**
**Violation of Plaintiff Constitutional Rights**
**As Against All Defendants**

253.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 252 as if fully set forth herein.

254.    Defendants have infringed Plaintiff Peter Fusco's constitutional right under the 2nd Amendment of the United States Constitution, the 14th Amendment of the Constitution, other Amendments and sections of the Constitution, laws and statues of the State of New York and the New York State Constitution.

255.    Ownership of firearms by individuals legally entitled to own or possess those firearms is a basic fundamental right protected by the Second Amendment and Fourteenth Amendment of the United States Constitution.

256.    Plaintiff is legally entitled to own and possess handguns, rifles and or shotguns.

257.    Defendants have unlawfully revoked the Plaintiff's pistol license without due process in that Plaintiff was not given a hearing prior to the determination revoking of his pistol license letter from the NCPD.

258.    As a result, Defendants have and are interfering and have infringed upon Plaintiff Peter Fusco's ability to exercise his rights under the constitution.

259.    In sum, Nassau County enforces these challenged restrictions under color of law in order to unconstitutionally limit gun licenses within Nassau County.

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530

260.    By reason of the foregoing, Plaintiff seeks a declaratory judgment, temporary restraining order, preliminary and permanent injunctive relief and monetary damages in an amount to be set at trial but not less than one million dollars ($1,000,000.00).

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – *Monell* Claim
### As Against All Defendants

261.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 260 as if fully set forth herein.

262.    The Defendants have created, implemented, continued, maintained and enforce a policy under which deters, prevents, and denies Nassau County residents from exercising their right to own or possess all types of legally possessed firearms, including handguns, rifles and shotguns, in violation of the Second and Fourteenth Amendments of the United State Constitution and other provisions of the United States and New York State Constitution.

263.    This policy is implemented by the County through its administrative agencies such as the Defendant NCPD, and the Defendant Nassau Police Department Commissioner Patrick Ryder, in his individual and official capacity and on information and belief, the Commander of the Pistol License Division who signed the revocation letter, unknown at this time, the Appeals Officer Christopher V. Todd, Esq.., John Doe #1 - 3", individually and in his official capacity, through "Jane Doe# 1-3", individually and in her official capacity as employees of the Defendant Nassau County.

264.    This policy as implemented is unconstitutional, treats pistol licensees more harshly than non-pistol licensees, and places burdens upon licensees without due process or legal justification.

38

265.     This policy and its continued implementation by the Defendants have caused the Plaintiff Fusco, both economic harm and emotional distress, and has placed similarly situated individuals in jeopardy of having their rights infringed.

266.     This policy, and its continued implementation by the Defendants, has deprived the Plaintiff of his constitutional rights.

267.     By reason of the foregoing, Plaintiff seeks a declaratory judgment, permanent injunctive relief and monetary damages for violations under *Monell* of not less than $1,000,000.00.

### THIRD CAUSE OF ACTION

#### 42 U.S.C. § 1983 – Punitive Damages
#### As Against All Defendants

268.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 267 as if fully set forth herein.

269.     Defendants' policy demonstrates an evil motive, bad faith and callous indifference to the Plaintiff's constitutional rights under the 2nd Amendment and 14th Amendments of the United States Constitution.

270.     Defendants' evil motive, bad faith and callous indifference for the Plaintiff's rights under the 2nd and 14th Amendments of the United States Constitution is demonstrated by the revocation letter and Appeal Officer Report, which contains numerous errors and misstatements of law and fact, the County's failure to implement a prompt review policy as directed under *Razzano v. Nassau County* in 2011, *Krimstock v. Kelly,* 306 F.3d 40 (2d Cir. 2002) or other legal requirements or court directives.

39

271.    Additionally, the Defendants demonstrated evil motive, bad faith and callous indifference by failing to conduct a non-biased appeal system unlike the clearly biased report done by the Appeal Officer in the within case.

272.    Upon information and belief, Defendants have and still conduct themselves with evil motive, bad faith and callous indifference to Plaintiff's constitutionally protected 2nd and 14th Amendment rights of the United States Constitution.

273.    The Defendants have acted in callous disregard of controlling legal authority, including Penal Law § 400.

274.    By reason of the foregoing, Plaintiff Peter Fusco is entitled to recover punitive damages against the Defendants of not less than $1,000,00.00.

### FOURTH CAUSE OF ACTION

**42 U.S.C. § 1988 – Legal fees**
**As Against All Defendants**

275.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 274 as if fully set forth herein.

276.    By reason of the foregoing, including but not limited to the Second Cause of Action, Plaintiff Peter Fusco is entitled to damages from all Defendants pursuant to U.S.C. § 1988(b) in an amount this Court deems just and proper.

### JURY TRIAL DEMANDED

277.    Plaintiff hereby demands jury trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

40

(i)   First Cause of Action: First Claim: Awarding Plaintiff in excess of $1,000,000.00 in damages; declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary damages for violation of his Second Amendment rights.

(ii)   Second Cause of Action: Second Claim: Awarding Plaintiff in excess of $1,000,000.00 in damages; declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary damages for violations under *Monell*, and the Appointment of a Special Monitor to oversee compliance with the Court's Order(s) pursuant to Federal Rule of Civil Procedure 53; and implementing educational requirement and training of the Defendants, NCPD police officers, Appeals Officers and County officials regarding Penal Law §400, the Second Amendment and the Fourteenth Amendments, and

(iii)   Third Cause of Action: Awarding Plaintiff punitive damages in an amount to be proven at trial, and

(iv)   Fourth Cause of Action: Awarding Plaintiff's attorneys' fees, costs and disbursements of bringing this action pursuant to 42 U.S.C. §1988(b) as the prevailing party under the Causes of Action set forth herein, in an amount this Court deems just and proper; and

(v)   For such other legal and/or equitable relief as this Court deems just and proper.

Dated: Garden City, New York
            November 2, 2020

La REDDOLA, LESTER
& ASSOCIATES, LLP

By _____

Robert J. La Reddola, Esq.,
Attorneys for Plaintiff
600 Old Country Road, Suite 230
Garden City, New York 11530
(516) 745-1951

41