**FILED**
**CLERK**

November 16, 2022

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
LAMBERT HENRY,

       Plaintiff,

    -against-

COUNTY OF NASSAU and NASSAU
COUNTY POLICE DEPARTMENT, former
Acting Commissioner THOMAS KRUMPTER,
Commissioner PATRICK RYDER, Lieutenant
MARC TIMPANO, Sergeant ADAM FISCHER,
Deputy Sheriff STEPHEN TRIANO, Deputy
Sheriff JEFFERY KUCHEK, Deputy Sheriff
MARK SIMON, And Deputy Sheriff
JEFFREY TOSCANO,

       Defendants.
--------------------------------------------------------------X
    *-and-*
--------------------------------------------------------------X
PETER FUSCO,

       Plaintiff,

    -against-

COUNTY OF NASSAU,
NASSAU COUNTY POLICE DEPARTMENT,
NASSAU COUNTY POLICE COMMISSIONER
PATRICK RYDER, CHRISTOPHER V. TODD,
ESQ., individually and in his official capacity, "JOHN
DOE #1 – 3", individually and in his official capacity,
"JANE DOE # 1 – 3", individually and in her official
capacity, the last three names being fictitious and
unknown to the plaintiff, but intended to designate
parties with an interest and knowledge of in the facts
herein,

       Defendants.
--------------------------------------------------------------X

**ORDER**

17-CV-6545 (GRB) (JMW)

19-CV-4771 (EK) (JMW)

1

**A P P E A R A N C E S:**

**Robert James La Reddola, Esq.**
**Steven M. Lester**
La Reddola, Lester & Associates, LLP
600 Old Country Road, Suite 230
Garden City, NY 11530
*For Plaintiff*

**Ralph J. Reissman, Esq.**
Nassau County Attorney's Office
One West Street
Mineola, NY 11501
*For Defendants*

**WICKS,** Magistrate Judge:

Familiarity with the procedural and factual background of these cases is assumed.  (*See* DE 87.) [1]  These two actions, brought by Plaintiffs Lambert Henry (17-cv-6545), and Peter Fusco (19-cv-4771), are on a joint coordinated discovery track and allege Second Amendment violations by the Nassau County Police Department.  Henry seeks monetary damages under 42 U.S.C. § 1983 for Defendants' alleged violation of Henry's Second Amendment right to possess any firearm, including a pistol, rifle, or shotgun, based upon Defendants' alleged policy or practice of deterring ownership of all firearms, with the intention and effect of reducing pistol license ownership in Nassau County.  (DE 42 (17-cv-6545).)  Fusco seeks monetary damages under 42 U.S.C. § 1983 for Defendants' alleged violations of his Second and Fourteenth Amendment rights relating to the revocation of his handgun license and his subsequent loss of firearms rights per the Nassau County Police Department.  (DE 25 (19-cv-4771).)

On July 12, 2022, Defendants filed a motion for a protective order which led to this Court's consideration of (1) the scope of proportionality with respect to production of pistol

---

[1] Citations to the docket will hereafter be cited in accordance with the *Henry* matter unless noted otherwise, as the content of the submissions in both *Henry* and *Fusco* are nearly identical.

license applications filed with the Nassau County Police Department for 2008-present and, (2) the applicability of the attorney-client and deliberative process privileges regarding certain "Findings and Recommendations" of the Nassau County Police Department.  (DE 85.)  Plaintiffs opposed Defendants' motions.  (DE 86.)  On September 7, 2022, the Court issued a Memorandum Decision and Order ("Sept. 7 Order") denying Defendants' request to limit the scope of discovery.  (DE 87.)  The Court also deferred ruling on the applicability of the privileges pending *in camera* inspection of the "Findings & Recommendations" documents withheld by Defendants.  (DE 87.)  On September 13, 2022, Defendants moved for reconsideration of the Sept. 7 Order (DE 69 (19-cv-4771)), which denied their protective order in part.  On September 20, 2022, Plaintiffs opposed Defendants' reconsideration motion (DE 74 (19-cv-4771)).

For the reasons that follow, the remaining branch of Defendants' motion for a protective order, as well as their motion for reconsideration of the Court's Sept. 7 Order, are denied.

## I.     Motion for Protective Order

The Court deferred decision on part of Defendants' motion for a protective order to adequately assess whether the subject documents are entitled to protection from disclosure based on the asserted privileges.  Defendants thereafter produced the documents for *in camera* inspection, invoking both the deliberative process and attorney-client privileges as to documents responsive to Demand No. 6 of Plaintiff's January 27, 2022, letter (DE 85 (citing DE 78)).  The demand called for the following: *"Any and all administrative appeals for reconsideration of a notice of suspension or revocation including the full report, without redaction from P.O. Todd or others from January 1, 2008 to date, including all decisions."*

Defendants stated that they already produced 127 pages containing "Final

Determinations" of the Police Commissioner regarding the appeals of the suspension or revocation of pistol licenses from 2014 to 2022.  But they withheld the "Findings & Recommendations of the appeals officer."  (DE 85.)  The Findings and Recommendations are written memoranda issued by an Appeals Officer and provided to the Police Commissioner when an applicant appeals the denial of their pistol license application or revocation.  These memoranda serve to assist the Police Commissioner in making the Final Determination with respect to each appeal.  Once the Final Determination is made, however, these Findings and Recommendations are attached to the final determination and provided to the applicants as the basis for the determination.

After considering the parties' submissions and reviewing the documents produced for *in camera* inspection, the Court finds that the documents are not immune from disclosure and must be turned over.

**A. Applicability of the Deliberative Process and Attorney-Client Privileges**

i.  <u>Deliberative Process Privilege</u>

"[T]he deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions . . . are formulated."  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, ___ U.S. ___, 141 S. Ct. 777, 785 (2021).  "The privilege is rooted in the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news."  *Id.*  "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position."  *Id.*

The Findings and Recommendations contain a large amount of background facts related

to the applicant's submissions.  Those underlying background or historical facts are not protected from disclosure.  *See Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*, 929 F.2d 81, 85 (2d Cir. 1991) ("The privilege does not, as a general matter, extend to purely factual material.").  The Findings and Recommendations were prepared to help the Police Commissioner make a final determination as to each application.  They contain opinions and set forth a recommended course of action, are pre-decisional and deliberative.  Thus, these documents would ordinarily be protected under the deliberative process privilege.  *See Mermerlstein v. United States Dep't of Just., Fed. Bureau of Investigation*, No. 19-CV-00312 (GRB)(JMW), 2021 WL 3455314, at *8 (E.D.N.Y. Aug. 4, 2021) (finding that deliberative process privilege covers "a number of materials, including 'recommendations . . . and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency,' as well as 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" (quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999)).

To rely on the protections afforded by the deliberative process privilege, however, the agency "must provide precise and certain reasons for preserving the confidentiality of the information."  *Martin v. New York City Transit Auth.*, 148 F.R.D. 56, 59 (E.D.N.Y. 1993).  The agency must also "demonstrate why disclosure of the documents would harm the agency."  *Mermerlstein*, 2021 WL 3455314, at *9.  Defendants are silent on this very issue, namely, they do not advance any reasons justifying the continued confidentiality of the information.  Rather, they simply argue that these documents are protected by the privilege.

Accordingly, since Defendants have not satisfied their burden of establishing the specific need or reasons for continued confidentiality treatment or demonstrate what, if any, harm would

result from disclosure of the Findings and Recommendations, the assertion of that privilege fails here (*see* DE 85).

But that's not the only reason the deliberative process assertion fails.  Even if Defendants did advance adequate justification to keep these records immune from discovery, the documents themselves lost their status as predecisional records once a determination was rendered, and the records were provided to the applicant.  This, as described below, results in a waiver of the privilege.  *See infra,* Section I.B.

ii.   <u>Attorney-Client Privilege</u>

Defendants' purported invocation of the attorney-client privilege does not aid them either.  The attorney-client privilege protects confidential communications between a client and counsel made for the predominant purpose of obtaining, or providing, legal advice.  *In re Erie*, 473 F.3d 413, 418 (2d Cir. 2007).  In addition to individuals and corporations, the privilege applies to government agencies.  *Herman v. Crescent Publ'g Grp., Inc.*, No. 00 Civ. 1665 SAS., 2000 WL 1371311, at *1 (S.D.N.Y. Sep. 21, 2000) (the privilege may also be relied upon by government agencies).  The Findings and Recommendations contain recommendations to the Police Commissioner by the Appeals Officers.  The Appeals Officers listed on the 127 documents produced for *in camera* review are indeed attorneys working within the Legal Bureau.  (*See* DE 85 at 4.)  These are Findings and Recommendations "regarding whether a legal basis exists to return, suspend or revoke a pistol license and other firearms within Nassau County."  (*See* DE 85 at 4.)  Thus, ordinarily, these documents would clearly fall within the protections of the attorney-client privilege.  Here, however, even if privileged, the privilege has been waived.  *See infra,* Section I.B.

j.   **Both the Attorney-Client and Deliberative Process Privileges Have Been Waived**

The attorney-client and deliberative process privileges cannot be invoked to immunize the Findings and Recommendations from discovery in this case.  These privileges were plainly waived.  The voluntary disclosure of a document to an individual outside of the agency – like what was done here – waives deliberative process privilege.  *See Marisol A. v. Giuliani*, No. 95 CIV. 10533, 1998 WL 132810, at *8 (S.D.N.Y. Mar. 23, 1998) ("[T]he release of a document only waives [the deliberative process privilege] for the document or information specifically released, and not for related materials."); *Dipace v. Goord*, 218 F.R.D. 399, 406–07 (S.D.N.Y. 2003) ("While disclosure of otherwise privileged material to a non-governmental recipient may result in a waiver, no waiver will be found unless that disclosure was authorized by the governmental agency and voluntary.").

Similarly, the "attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication over which the privilege is claimed." *United States v. International Brotherhood of Teamsters*, 961 F. Supp. 665, 673 (S.D.N.Y. 1997); *see also Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 811 F. Supp. 2d 713, 743–44 (S.D.N.Y. 2011) ("attorney client privilege can be waived if the document is published, or disclosed to private individuals or to nonfederal agencies.").  Here, the documents have lost privileged status for two reasons.

*First,* the Findings and Recommendations were disclosed to each applicant along with each Final Determination.  Once these were released to the applicant advancing the reasoning in support of the final determination, they lost their status as privileged.  This knowing and voluntary disclosure by the Police Commissioner to the applicant—a private individual outside of the agency or attorney-client relationship—effectively waives the privileges that may have

otherwise attached to these documents.  The Findings and Recommendations were turned over

wholesale: none contained redactions. This alone is sufficient to order production of these

documents.

*Second*, even where an agency incorporates a document by reference when making its

Final Determination, the deliberative process and attorney-client privileges may be waived as to

those documents.  That is, such incorporated or referenced documents lose their "predecisional"

and deliberative character when the agency expressly relied upon them in arriving at the final

determination.  *See Nat'l Council of La Raza v. Dep't of Just.*, 411 F.3d 350, 356–60 (2d Cir.

2005) (noting that an agency may be required to disclose a document otherwise entitled to

protection under the deliberative process and attorney-client privileges if the agency chooses to

expressly adopt or incorporate document or memorandum by reference).  Whether a document is

considered to have been incorporated or adopted by reference is not based on the usage of

explicit language to that effect.  *Id.* at 358.  Rather, the agency's reliance on the document's

analysis as well as its conclusion is what causes the document to lose its privileged status.  *Id*.

To make this determination, the "court must examine all the relevant facts and circumstances in

determining whether express adoption or incorporation by reference has occurred."  *Id.* at 357

n.5.

The Final Determinations are issued by the Police Commissioner.  They state that a copy

of the Findings and Recommendations are not simply referenced, but they are attached.  Further,

the Final Determinations state the Appeals Officer's ultimate recommendation, namely, approval

or denial.  They note that the Police Commissioner reviewed the Findings and Recommendations

and record, and following that review, the Police Commissioner concurs with the Appeals

Officer's recommendation.  They also note that the applicant now has the *complete*

administrative record relied upon to reach the determination.  *See Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 70 (D.C. Cir. 1974)). ("[W]here a decision-maker has referred to an intra-agency memorandum as a basis for his decision . . . this court has required disclosure of the memoranda, for, once adopted as a rationale for a decision, the memorandum becomes part of the public record." (cited in *Nat'l Council of La Raza*, 411 F.3d at 358)).

An *in camera* inspection of the 127 Final Determinations shows that in each case, the Police Commissioner concurred with the Appeals Officer's recommendation.  No independent basis for the decision is provided.  The Findings and Recommendations are expressly referenced in, and provided to the applicant along with, the Final Determination.  *See Tax'n With Representation Fund v. I. R. S.*, 646 F.2d 666, 678 (D.C. Cir. 1981) (noting that a pre-decisional document can lose its status if "adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public.").   Under these circumstances, Defendants' motion for a protective order is denied.

## II.    Motion for Reconsideration

Defendants also move for reconsideration, pursuant to Local Rule 6.1, of this Court's Sept. 7 Order denying their request to limit the scope of discovery regarding pistol license applications filed with the Nassau County Police Department from 2008 to the present.  (DE 85 (17-CV-6545); DE 69 (19-cv-4771).)

A Court may grant reconsideration if there was an "intervening change of controlling law," "new evidence" available, or "to correct a clear error or prevent manifest injustice."  *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 268 (E.D.N.Y. 2009) (citing *Doe v. New York City Dept. of Social Servs.,* 709 F.2d 782, 789 (2d Cir. 1983)).  "A motion for reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court." *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001).

"Whether to grant or deny a motion for reconsideration or reargument is in the sound discretion" of the district court. *Id.* But "Local Civil Rule 6.3 should be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Id.* at 462. A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Put simply, a reconsideration motion is not an opportunity for a "do-over."

Defendants' relevance and proportionality arguments are largely a rehash of the same arguments advanced before and rejected by the Court in the Sept. 7 Order. (*See* DE 87 at 6-8.) Defendants argued that they should only be required to produce the portion of the pistol license applications containing the two-page questionnaire, and not the supplemental materials that include character references, employee history records, court records, utility bills, letters explaining prior encounters with law enforcement, court records, Department of Motor Vehicle abstracts, armed forces records, Orders of Protection, medical drug prescriptions, passport photographs, and driver's licenses. (DE 85 at 2.) They stated that Plaintiffs' claims pertain to the Nassau County Police Department maintaining an unconstitutional policy of suppressing the "number" of pistol licenses, so the supplemental portions of the applications were not relevant to the *number* of applications submitted. (*Id.*) They asserted that production of these supplemental materials, which often consists of 15-20 pages, was not proportional to the needs of the case. (*Id.*)

Defendants now ask this Court to reconsider its ruling because the heart of Plaintiffs' claims are that the Nassau County Police Department maintains an unconstitutional policy of

suppressing the "number" of pistol licenses.  (*See* DE 88 at 2-3.)  So, they say, Plaintiffs do not

need the supplemental portions of the applications since they are not relevant to the *number* of

applications submitted.  (*Id.*)  As is apparent, nothing has been identified that the Court

overlooked, nor has any new or additional evidence surfaced since the Sept. 7 Order.  Defendants

simply do not identify any facts or controlling law that they previously submitted that the Court

overlooked in rejecting these arguments.

     More importantly, Defendants fail to identify anything previously raised by Defendants

that alters the Court's prior conclusion that the Second Circuit's decision in *Henry v. County of*

*Nassau*, 6 F.4th 324 (2d Cir. 2021) supports a finding that the supplemental materials are

relevant and proportional to the needs of this case because they relate to reliability of the

evidence on which the Nassau County Police Department made its decisions.  (DE 87 at 8 ("At

bottom, the Second Circuit raised serious questions surrounding the bona fides of the

Defendants' inquiry and investigation as to whether substantial evidence existed to "support[] a

finding that Henry was too dangerous to possess firearms." (citing *Henry*, 6 F.4th at 334).)

     Next, Defendants state that the Court rejected their arguments as to the burdens and

expenses of discovery based in part on the "mistaken premise" that Defendants previously

agreed to produce the "supplemental" portions of the pistol license applications.  (*See* DE 88 at

3-4.)  That premise was not mistaken.  (*See* DE 85 at 1 (Plaintiffs' Request No. 1: "*Any and all*

*documents related to pistol license applications . . . .*"); DE 59 (No. 17-6545) ("[T]he County has

agreed to produce on behalf of the County a new document production responsive to plaintiffs'

requests for documents in electronic form and without redactions.").)

     Nonetheless, as Defendants correctly identify, the Court based its decision *in part*, not

solely or even primarily, on those grounds.  (*See* DE 87 at 9 ("*Furthermore*, the County

previously agreed to provide the documents in electronic form without redactions, Bates numbered and organized in response to plaintiff's document demands." (emphasis added).)  The Court first stated that "Defendants' additional arguments that the production would be unduly burdensome and that they have already produced thousands of pages of responsive documents, [are] simply not persuasive."  (*See* DE 87 at 8-9 (citing *Acorn v. Cnty. of Nassau*, No. CV 05-2301(JFB)(WDW), 2008 WL 708551, at *2 (E.D.N.Y. Mar. 14, 2008) ("The volume of documents already produced has no bearing on whether these particular documents must also be produced.").)  Given the relevancy of these documents, and considering proportionality concerns, Defendants' contentions that the production would be unduly burdensome and that they have already produced thousands of pages of responsive documents are simply insufficient to defeat their discovery obligations.

And finally, as a last-ditch argument, Defendants contend that Plaintiffs had waived any right to the documents because they accepted, without protest, prior productions that did not include them.  (*See* DE 88 at 3-4.)  Defendants' briefs set forth procedural facts regarding the history of discovery that were not asserted in their underlying motion.  (DE 88.)  Defendants now argue that: they originally objected to providing the pistol license applications and the Honorable A. Kathleen Tomlinson directed them to produce the applications dating back only to 2011.  (*Id.*) They further state that they began to produce the applications, but only the first two-pages, with names and addresses redacted, and Plaintiffs' Counsel only objected regarding the redactions. (*Id.*)  To the extent Defendants submissions seek to raise new arguments, those arguments are rejected.  *See Davidson*, 172 F. Supp. 2d at 464 ("A motion for reconsideration should not be used 'to put forward additional arguments which the movant could have made, but neglected to make before judgment.'").

In short, none of what Plaintiff submits in support of the instant motion satisfies the standard necessary to reconsider and modify the Court's Sept. 7 Order.  Defendants simply do not identify "any controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court."  *See Davidson*, 172 F. Supp. 2d at 461.  Accordingly, Defendants' motion for reconsideration is denied.

## CONCLUSION

For the reasons set forth herein, Defendants' motions for a protective order (DE 85 (17-6545) and DE 65 (19-4771), and reconsideration of the Court's Sept. 7 Order (DE 88 (17-6545) and DE 69 (19-4771), are denied. Defendants are directed to arrange to retrieve the documents submitted for *in camera* inspection and produce the withheld documents to Plaintiffs on or before November 23, 2022.

Dated:        Central Islip, New York
              November 16, 2022

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

13